UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20552-GAYLES/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

     Defendants.

_____/

UNITED STATES' OBJECTIONS TO, OR IN THE ALTERNATIVE APPEAL OF,
CHIEF MAGISTRATE JUDGE TORRES'S ORDERS [ECF NOS. 75, 78]

     The United States of America objects to Chief Magistrate Judge Edwin G. Torres's July 6, 2023 *Order on Defendants' Joint Motion For Release of Lis Pendens on Substitute Assets* [ECF No. 75] and July 7, 2023 *Order on Defendant's Motion To Clarify Order on Defendants' Joint Motion for Release of Lis Pendens on Substitute Assets* [ECF No. 78] (collectively, the "Order"), under Local Magistrate Rule 4(a)(2) and 28 U.S.C. § 636(b)(1)(B). In the alternative, the United States appeals the Order, under Local Magistrate Rule 4(a)(1) and 28 U.S.C. § 636(b)(1)(A).

     The Order appears to have been issued in error under 28 U.S.C. § 636(b)(1)(A), and instead should be construed as a report and recommendation under 28 U.S.C. § 636(b)(1)(B). As explained below, 28 U.S.C. § 636(b)(1)(A) precludes a magistrate judge from determining "a motion for injunctive relief," and under Eleventh Circuit precedent the review of a discharge of *lis pendens* is "treated in the same manner as a denial, dissolution, or modification of an injunction[.]" *See Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972); *infra* 9. If the Court disagrees, the United States also has complied with Local Magistrate Rule 4(a)(1), for an appeal of a magistrate's order.

1

## INTRODUCTION

The Order finds that neither federal nor Florida law authorize the Government's filing of *lis pendens* on Defendants David Rivera's and Esther Nuhfer's substitute real property, and lifts *lis pendens* recorded on five properties first identified for forfeiture pursuant to 21 U.S.C. § 853(p).[1] But the Order fails to address the Fifth and Sixth Amendment issues that made Defendants' Joint Motion for Release of *Lis Pendens* on Substitute Assets [ECF No. 54] ("Motion") ripe for pretrial review. The issue before the Court is whether *lis pendens* recorded on Defendants' substitute property must be released to secure their counsel of choice. The Order makes three main legal errors in sidestepping this issue, warranting *de novo* review.

First, the Order wrongly concludes that the United States' *lis pendens* recorded on substitute property violates Florida law. The Government may file *lis pendens* because there is a "fair nexus" between the property and the criminal forfeiture sought by the Indictment.

Second, the Order mischaracterizes a *lis pendens* as a "restraint" in contradiction to binding Eleventh Circuit precedent set forth in *United States v. Register*, 182 F.3d 820 (11th Cir. 1999).

Third, the Order misreads *Luis v. United States*, 578 U.S. 5 (2016), in failing to recognize that the Supreme Court found that the United States had an "important" interest in substitute property that yielded to a defendant's need to secure counsel under the Sixth Amendment. Without a showing of need, there is no Sixth Amendment concern, the United States' "important" interest stands, and the Defendants' request for release of *lis pendens* should be denied.

For the reasons detailed below, and after a *de novo* review, the Court should reject the

---

[1] Three of the five Florida real properties first identified as substitute property have been traced to and are involved in the charged offenses. *See* Second Protective Order, ECF No. 82. The other two properties subject to the Order are located at 549 Bethesda Court, Oviedo, Florida 32765 (Rivera) and 13604 S.W. 83rd Court, Palmetto Bay, Florida 33158 (Nuhfer).

Order, and deny the Motion. The United States requests oral argument, which has not yet occurred.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2022, a Grand Jury sitting in the Southern District of Florida returned an Indictment charging Defendants in Count 1 with conspiracy to commit an offense against the United States, that is, failure to register as a foreign agent, in violation of 18 U.S.C. § 371 and 22 U.S.C. §§ 612(a), 618(a)(1), in Count 2 with failure to register as a foreign agent, in violation of 22 U.S.C. §§ 612(a) and 618(a)(1), in Count 3 with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and in Counts 4-8 with engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957. Indictment, ECF No. 3.

The Indictment alleged that Rivera and Nuhfer conspired to enrich themselves unlawfully by engaging in political activities in the United States on behalf of the Government of Venezuela, and by representing Venezuelan governmental interests before U.S. officials, to try to influence U.S. foreign policy toward Venezuela. It also alleged that to conceal these efforts, Defendants failed to register under the Foreign Agents Registration Act ("FARA") as Venezuelan government agents and created the false appearance that they were providing consulting services to PDV USA Inc., a wholly owned subsidiary of the Venezuelan state-owned and controlled oil company, Petróleos de Venezuela, S.A. ("PDVSA"). *Id.* at 4-27. Between late March and late October 2017, over $20 million in U.S. currency was transferred to Interamerican Consulting, Inc., which Rivera divided among himself, Nuhfer, and others. *Id.* at 8, 10, 13-14, 16-17, 25, 27. From February 2017 through December 2018, Defendants conspired to launder these proceeds, engaging in monetary transactions in criminally derived property of a value greater than $10,000. *Id.* at 28-31.

The Indictment also contained forfeiture allegations, which provided that upon conviction of a violation of, or conspiracy to violate, 22 U.S.C. §§ 612(a) and 618(a)(1), Defendants must

forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C). *Id.* at 31. The forfeiture allegations also provided that upon conviction of a violation of 18 U.S.C. §§ 1956 and/or 1957, Defendants must forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). *Id.*

The forfeiture allegations listed five assets alleged to be subject to forfeiture as directly forfeitable, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1). *Id.* at 32. Additionally, the allegations specifically identified other assets alleged to be subject to forfeiture as substitute property pursuant to 21 U.S.C. § 853(p). *Id.* at 33. The Government recorded *lis pendens* on all real properties, under Florida and Georgia law.[2] *See* Notice of Filing, ECF No. 55.

Defendants' temporary counsel then contacted the United States about the *lis pendens* on real properties then-identified as substitute in the Indictment, asking for their release to pay for counsel to permanently appear. The Government consistently stated that it would consider releasing *lis pendens* if Defendants showed that they needed substitute property to retain counsel. Defendants declined to address the availability of their other assets identified by the Government or make any showing of financial need, beyond a bare offer by counsel to state there was a need.

On February 10, 2023, counsel for Defendants each filed a "limited appearance … to litigate the propriety of the government placing *lis pendens* on [Defendants'] innocent 'substitute assets.'" ECF Nos. 37, 38, and 40. On March 13, 2023, under the Court's briefing schedule, Defendants filed the Motion [ECF No. 54], requesting the release of *lis pendens* on some substitute property to pay for their attorneys' fees. The United States responded on April 4, 2023 [ECF No. 56] ("Gov. Op."), and, after several extensions, Defendants filed their reply on May 30, 2023 [ECF

---

[2] Defendants did not challenge the *lis pendens* under Georgia state law for two real properties.

No. 68]. On June 13, 2023, Rivera filed a notice of supplemental authority [ECF No. 69], providing an order discharging *lis pendens* in *Drummond v. Alsaloussi, et al.*, Case No. 23-CV-21379-BLOOM/OTAZO-REYES (S.D. Fla).

Then, Chief Magistrate Judge Torres issued the Order on July 6 and 7, 2023 [ECF Nos. 75, 78],[3] granting Defendants' request to release the Government's *lis pendens* recorded on these five real properties: (a) 3663 S. Atlantic Ave, Unit 20C, New Smyrna Beach, Florida 32169 (Rivera); (b) 9425 S.W. 38th Street, Miami, Florida 33165 (Nuhfer); (c) 82 Tingler Lane, Marathon, Florida 33050 (Nuhfer); (f) 549 Bethesda Court, Oviedo, Florida 32765 (Rivera); and (g) 13604 S.W. 83rd Court, Palmetto Bay, Florida 33158 (Nuhfer).[4]

## APPLICABLE PRINCIPLES OF LAW

### I.   Federal forfeiture law

"Forfeiture is an element of the sentence imposed *following* conviction ...." *Libretti v. United States*, 516 U.S. 29 (1995) (emphasis in original). As the Indictment alleges, the relevant substantive forfeiture statutes here are 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), not 21 U.S.C. § 853(a) as the Order states (§ 853(a) covers narcotics offenses). *See* Order at 3-4. Under 18 U.S.C. § 982(a)(1), "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956 [or] 1957 ... of this title, shall order that the person forfeit ... any property, real or personal, involved in such offense, or any property traceable to such property." And under 18 U.S.C. § 981(a)(1)(C)—criminally applicable by 28 U.S.C. § 2461(c)—"any property, real or

---

[3] Chief Magistrate Judge Torres's July 7, 2023 order clarified his July 6, 2023 order, extending his ruling that *lis pendens* be dissolved to Nuhfer's properties.

[4] The lettering here reflects how these assets were identified in the Indictment. After further investigation, three of these real properties are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1): (a) 3663 S. Atlantic Ave, Unit 20C, (b) 9425 S.W. 38th Street, and (c) 82 Tingler Lane. *See* Second Protective Order, ECF No. 82. The remaining substitute properties subject to the Order are located at: (f) 549 Bethesda Court; and (g) 13604 S.W. 83rd Court.

personal, which constitutes or is derived from proceeds traceable to … any offense constituting a 'specified unlawful activity' ... , or conspiracy to commit such offense" is subject to forfeiture. A felony FARA violation is a specified unlawful activity. *See* 18 U.S.C. § 1956(c)(7)(D).

As the Order acknowledges, 21 U.S.C. § 853's procedural provisions are incorporated to govern criminal forfeiture. *See* 18 U.S.C. § 982(b)(1); 28 U.S.C. § 2461(c); *see also United States v. Waked Hatum*, 969 F.3d 1156, 1162 (11th Cir. 2020) (referencing § 982(b)(1)). Pursuant to 21 U.S.C. § 853(e), the Court may enter a protective order restraining "tainted" property, *i.e.*, property subject to forfeiture under the relevant substantive statutes.[5] *See* Order at 4. In addition, if "tainted" property is unavailable, 21 U.S.C. § 853(p) authorizes the forfeiture of substitute property:

> **(p) Forfeiture of substitute property**
> **(1) In general** Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—
> > **(A)** cannot be located upon the exercise of due diligence;
> > **(B)** has been transferred or sold to, or deposited with, a third party;
> > **(C)** has been placed beyond the jurisdiction of the court;
> > **(D)** has been substantially diminished in value; or
> > **(E)** has been commingled with other property which cannot be divided without difficulty.
> **(2) Substitute property**
> In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

The Order also discusses the statute's codification of the "relation back" doctrine in 21 U.S.C. § 853(c), but erroneously represents it does not apply to substitute property based on *United States v. Parrett*, 530 F.3d 422, 428-29 (6th Cir. 2008). Order at 5. As the Government noted in its Opposition, it is unsettled in the Eleventh Circuit how § 853(c) applies to substitute property. Gov. Op. at 18 n.11 (citing cases that have vested the United States' interest at the time of the offense,

---

[5] 21 U.S.C. § 853(e) provides for a "restraining order or injunction" to be placed on property subject to forfeiture following a probable cause finding either by a grand jury or a court. *See also United States v. Gosney*, 2023 WL 1434183, at *3 (11th Cir. Feb. 1, 2023) (discussing § 853(e)).

*e.g.*, *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003); *United States v. Derochemont*, 2011 WL 6319293, at *2-3 (M.D. Fla. Dec. 15, 2011); *United States v. Gallion*, 2010 WL 3620257, at *12 (E.D. Ky. Sept. 10, 2010); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005), as well as cases that hold that the Government's interest vests later at indictment or after conviction, *e.g.*, *United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011), *United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007); *United States v. Kramer*, 2006 WL 3545026, at *6-8 (E.D.N.Y Dec. 8, 2006)).[6] *Parrett* itself acknowledged this circuit split. 530 F.3d at 430 (noting "the circuits are split as to whether the government's interest in substitute property relates back to the date of the act giving rise to the forfeiture in the same way as the government's interest vests regarding property directly tainted by the illegal activity").

That is not to say the Government's interest in substitute assets would be superior to a defendant's interest until conviction, especially for Sixth Amendment purposes. *See Luis,* 578 U.S. 5 (2016). But that interest would be superior to third parties, which supports recording *lis pendens*.

## II.    Florida *lis pendens* law

In Florida—even in federal court—filing *lis pendens* is governed by Florida Statute § 48.23. *See* Fla. Stat. § 48.23; *see also infra*. A Latin term, "*lis pendens*" literally means "pending suit." *De Pass v. Chitty*, 105 So. 148, 149 (Fla. 1925). "The notice, typically recorded in the chain

---

[6] Contrary to the Order's suggestion, *McHan* is not an "outdated Fourth Circuit" case, since the Fourth Circuit declined to overrule it post-*Luis*. *Compare* Order at 13 n.6 *with United States v. Marshall*, 872 F.3d 213, 221 n.13 (4th Cir. 2017) ("In *United States v. McHan*, 345 F.3d 262, 271-72 (4th Cir. 2003), we 'construe[d] the [forfeiture] statute liberally' to hold that title to substitute property, like tainted property, vests in the Government when the crimes leading to the forfeiture are committed, despite § 853's silence on when the Government's interest in § 853(p) substitute property vests. We later overturned our precedent—on which *McHan* partially relied—regarding a similarly liberal construction of a different provision of the forfeiture statute in *Chamberlain*, but we need not address whether that holding has any effect on our decision in *McHan* at this time because the overturned precedent dealt only with pretrial, preconviction forfeiture.").

of title was, at common law, intended to warn all persons that a certain piece of property was the subject of litigation, and that any interests acquired during the pendency of the suit were subject to its outcome." *Whitburn, LLC v. Wells Fargo Bank, N.A.*, 190 So. 3d 1087, 1090 (Fla. 2d DCA 2015) (quoting Black's L. Dict. 942–43 (7th ed. 1999)). A *lis pendens* serves two important purposes: it (1) "acts to warn future purchasers or encumbrancers that a suit is pending that could affect title in a given piece of property," and (2) "protect[s] a plaintiff from intervening liens that could impair or extinguish that plaintiff's claimed property rights." *J.B.J. Inv. of S. Fla. v. Maslanka*, 163 So. 3d 726, 728 (Fla. 5th DCA 2015); *see also Chiusolo v. Kennedy*, 614 So. 2d 491, 492 n.1 (Fla. 1993) (*lis pendens* "prevent third-party purchasers from 'buying' a lawsuit when they purchase the property.").

Consequently, a *lis pendens* is proper when a "fair nexus" exists between the real property and legal dispute. *Conseco Servs., LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 3d DCA 2005). A "fair nexus" requires only a "good faith, viable claim." *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007). This is not a heavy burden; "[t]he relevant question is whether alienation of the property or the imposition of intervening liens, if either actually occurred, *conceivably* could disserve the purposes for which lis pendens exists. Where the answer is yes, fair nexus *must* be found." *Chiusolo*, 614 So. 2d at 492 (emphasis added). All that is required is "a minimal showing that there is at least some basis for the underlying claim." *Nu-Vision*, 965 So. 2d at 235; *see also Saadi v. Pierre a Maroun*, 2020 WL 1894351, at *3 (M.D. Fla. Jan. 3, 2020). "The proponent need not demonstrate a substantial likelihood of success on the merits[.]" *J.B.J. Inv. of S. Fla.*, 163 So. 3d at 728 (citing *Chiusolo*, 614 So. 2d at 492); *see also Landmark at Crescent Ridge LP v. Everest Fin., Inc.*, 219 So. 3d 218, 221 (Fla. 1st DCA 2017); *Axos Clearing, LLC v. Reynolds*, 2019 WL 2082551, at *3 (S.D. Fla. May 9, 2019) (same); *Regents Park Invs., LLC v.*

*Bankers Lending Servs., Inc.*, 197 So. 3d 617, 621 (Fla. 3d DCA 2016) (finding it "impracticable to require a proponent of a lis pendens to fully prove each element of its claim in an evidentiary hearing" before trial, following *Nu-Vision*'s "minimal showing").

### STANDARD OF REVIEW

While the Order is presented as an "order," nominally under 28 U.S.C. § 636(b)(1)(A), it should be treated as a report and recommendation under 28 U.S.C. § 636(b)(1)(B). Section 636(b)(1)(A) enumerates the matters district court judges may designate magistrate judges to hear and determine. Expressly excluded in 28 U.S.C. § 636(b)(1)(A) is "a motion for injunctive relief."

In the Eleventh Circuit, review of an order "releasing certain real property from coverage of the *lis pendens*" is "treated in the same manner as a denial, dissolution, or modification of an injunction, all of which are appealable." *Beefy King*, 464 F.2d at 1104; *Tribble v. Tew*, 760 F. App'x 718, 720 (11th Cir. 2019) (same, following *Beefy King*).[7] Since the motion and Order are treated like injunctive relief, they are omitted from 28 U.S.C. § 636(b)(1)(A) and the Court should conduct *de novo* review of the Order under 28 U.S.C. § 636(b)(1)(B). *See also* L. Mag. R. 4(b).[8]

In the alternative, should this Court determine that the Order was issued appropriately under 28 U.S.C. § 636(b)(1)(A), then the standard of review is *clearly erroneous* or *contrary law*. *See also* L. Mag. R. 4(a). The Court also may reconsider *sua sponte* any matter determined by a

---

[7] Although binding circuit precedent dictates that a motion to discharge a *lis pendens* be handled in the same manner as injunctive relief, Florida courts do not review a *lis pendens*, in and of itself, as an injunction. *See, e.g.*, *Loidl v. I & E Grp.*, 927 So. 2d 1016, 1017-18 (Fla. 2d DCA 2006). *But cf. Tribble*, 760 F. App'x at 720 ("Appellees contend *Beefy King* should not control our analysis because subsequent opinions of the Florida Supreme Court have undermined *Beefy King*'s reasoning by drawing distinctions between lis pendens and injunctions. But determining how a district court's order should be treated for purposes of federal appellate jurisdiction is a matter controlled by federal law.").

[8] That does not mean a *lis pendens* is an injunction. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 58 (1993) (distinguishing between a "seizure" an "ex parte restraining order" and *lis pendens*). *Compare* Fla. Stat. § 48.23 (*lis pendens*) *with* Fla. Stat. Ch. 60 (injunctions).

magistrate judge under this section. *Id.*

## ARGUMENT

I.   **Filing *lis pendens* on substitute property complies with Florida law.**

The Order erroneously found that filing *lis pendens* on substitute property did not comply with Florida law. Order at 18-22. This ruling is based on multiple fundamental errors that ultimately derive from the Order misstating the Government's interest in substitute property, *see id.* at 19; conflating a criminal prosecution and forfeiture with a civil "lawsuit," *see id.* at 6 (referring to prosecution as a "lawsuit"), 7 (quoting case referring to "lawsuits"), 18 (referring to "the Government's lawsuit"), and 19 (same); and, relatedly, treating criminal forfeiture as the equivalent of a civil lawsuit seeking money damages, *see id.* at 21.

A *lis pendens* is valid when authorized by state law. *See Parrett*, 530 F.3d at 432; *United States v. Woods*, 436 F. Supp. 2d 753, 755 (E.D.N.C. 2006) (*lis pendens* filed on substitute property was proper under, *inter alia*, Florida law).[9] As the Order recognizes, a Florida *lis pendens* is proper when a "fair nexus" exists between the real property and legal dispute, which requires only a "good faith, viable claim." Order at 18; *Chiusolo*, 614 So. 2d at 492; *Nu-Vision*, 965 So. 2d at 234. As described above, fair nexus must be found if, while the legal dispute is pending, alienation or other encumbrances on the property *conceivably* could disserve the basis for the *lis pendens*. A valid *lis pendens* does not require a showing of the likelihood of success on the merits, and uncertainty about the outcome does not preclude a *lis pendens* under Florida law. *See supra* at 7-8.

Here, the United States has more than satisfied the required "minimal showing" for a

---

[9] *Woods* recognized that, at that time, the Fourth Circuit permitted even pretrial restraints on substitute assets, which law since has been overturned. *Woods*'s ruling that statutory prerequisites were satisfied to file state-law *lis pendens*, however, was based on the relation-back theory, which in the Fourth Circuit, even post-*Luis*, remains good law. *See Marshall*, 872 F.3d at 221 n.13, discussed *supra* n.6.

Florida *lis pendens*. *See Nu-Vision*, 965 So. 2d at 235. Under 21 U.S.C. § 853(p), the United States is authorized to forfeit substitute property when directly traceable property is unavailable for forfeiture, and any one of five prongs have been met. Two of the available prongs include when illicit assets have been transferred to third parties or substantially diminished in value. *See* 21 U.S.C. § 853(p)(1)(B), (D).[10] On the Indictment's face, Defendants' criminal acts generated more than $20 million in criminal proceeds. *See* Indictment, Count 1. The value of the directly forfeitable property the Government located is far less than that amount. *See* Indictment ¶ 4, at 31-34 (Forfeiture Allegations).[11] Under these circumstances, forfeiture of the substitute property (as well directly forfeitable property) would be available upon conviction. Thus, the substitute real properties listed in the Indictment are subject to mandatory forfeiture. *See United States v. Fleet*, 498 F.3d 1225, 1227-31 (11th Cir. 2007) (any of defendant's property may be forfeited as substitute asset); *United States v. Knowles*, 819 F. App'x 781, 783 (11th Cir. 2020) ("We've held that the word 'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all,' …. Rule 32.2(e) further provides that, if the government shows that the defendant's property is subject to forfeiture as substitute property, the court *must* enter an order forfeiting that property.") (emphasis added). As a result, the Government has shown a good faith, viable claim that the substitute real properties are subject to forfeiture.

The Order erroneously represents that the "Government's lawsuit," referring to criminal forfeiture, does not "embod[y] an 'apparent legal or equitable' interest in Defendants [*sic*] innocent assets at this stage of the proceedings" because "the United States does not have a ripened interest

---

[10] Indeed, By Defendants' own arguments, those prongs are met here. If Defendants require substitute property to pay for counsel, then they no longer possess unidentified directly forfeitable assets, meaning substitute asset forfeiture *must* occur.

[11] The directly forfeitable properties' net equity (including the three real properties the Government traced post-indictment, *supra* n.4) amounts to only approximately $6.2 million.

11

in § 853(p) substitute property until (1) after the defendant's conviction[12] and (2) the court determines the defendant's § 853(a) forfeitable property is out of the government's reach for a reason enumerated in § 853(p)(1)(A)-(E)." *See* Order at 19 (quoting *Jarvis*, 499 F.3d at 1204, a pre-*Luis* case reviewing *lis pendens* as "pre-conviction restraints" under New Mexico law).[13] The Order asserts that "even then, substitute assets only come into play when needed to satisfy a shortfall," likening criminal forfeiture of substitute property to a lawsuit whose primary purpose is to recover money damages. *See id.* at 21 (quoting *Kramer*, 2006 WL 3545026, at *1).

Contrary to the Order's characterization, the purpose behind 21 U.S.C. § 853(p)'s substitute-property forfeiture is to ensure that crime does not pay, not to recover money damages. *Compare id. with Fleet*, 498 F.3d at 1230 (noting the "remedial purpose of § 853" and citing the substitute forfeiture's legislative history as addressing "one of the most serious impediments to criminal forfeitures") (citations omitted). Indeed, 21 U.S.C. § 853 does not mention money judgments, and thus it is error to characterize the forfeiture of substitute property as an order to satisfy a money judgment. Although true that in many cases the Government obtains a forfeiture money judgment in addition to forfeiting actual property, that does not convert a criminal

---

[12] The relation-back doctrine, even when applied to "tainted" property, passes title only "upon conviction," as the dissents in *Luis* observed when criticizing the plurality. *See Luis*, 578 U.S. at 43 (Kennedy, J. dissenting, joined by Alito, J.) ("The doctrine, however, does not alter the time at which title to forfeitable property passes to the Government. Title is transferred only when a conviction is obtained or the assets are otherwise forfeited; it is only once this precondition is met that relation back to the time of the offense is permitted."); *id.* at 52-53 (Kagan, J. dissenting).

[13] Indeed, the Order repeatedly cites to cases determined under other state law (not Florida's) in finding the Government's *lis pendens* here were not authorized. *United States v. Boyer*, 58 F. Supp. 3d 173, 176 (D. Mass. 2014) (Massachusetts law); *Kramer*, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2006) (New York law); *United States v. Queri*, 679 F. Supp. 2d 295, 297-98 (N.D.N.Y. 2010) (New York law); *United States v. Coffman*, 2010 WL 3984886, at *4 (E.D. Ky. Oct. 7, 2010) (Kentucky law); *United States v. Jewell*, 556 F. Supp. 2d 962, 967-68 (E.D. Ark. 2008) (Arkansas law). As the briefing makes plain, whether *lis pendens* may be filed in any case relies heavily on caselaw, and not the text of statutes. And these statutes are not "virtually identical" to Florida's. *Compare, e.g.*, AR Code §§ 16-59-101, 102 *with* Fla. Stat. § 48.23.

12

prosecution into the equivalent of a civil suit for a money damages.[14] Contrary to *Kramer*, a case that the Order relies on, the forfeiture of substitute property does not require that a separate order of forfeiture to be first entered. *Cf. Kramer*, 2006 WL 3545026, at *6 (E.D.N.Y. Dec. 8, 2006) (cited by Order at 21); *also cf. Jewell*, 556 F. Supp. 2d 962 (following *Kramer*'s analysis of substitute asset forfeiture).[15] Further, as noted in the Government's Opposition, Florida courts have upheld *lis pendens* when a judgment may later be executed against real property. *See* Gov. Op. at 16 n.10 (discussing *Saadi*, 2020 WL 1894351, at *8 (*lis pendens* proper under Florida law where plaintiff obtained judgment against defendant but failed to collect, and *may* be able to recover through execution and sale of condominium in supplemental proceeding)).[16] Indeed, where the Government forfeits assets—both directly forfeitable and substitute—and obtains a forfeiture money judgment, both types of assets are applied to the outstanding balance of that judgment. The assets thus are indistinguishable in that respect, and there is no dispute or argument that forfeiting traceable assets to pay down a forfeiture money judgment somehow converts the prosecution into a civil suit for money damages.

---

[14] In other words, the Government's interest in substitute property in a criminal prosecution is distinguishable from the Order-cited decisions discharging Florida *lis pendens*. *See, e.g.*, *Sheehan v. Reinhardt ex rel. Est. of Warren*, 988 So. 2d 1289, 1291 (Fla. 2d DCA 2008) (litigant seeking a declaratory judgment and breach of marital contract) (Order at 18, 21); *DeGuzman v. Balsini*, 930 So. 2d 752, 755 (Fla. 5th DCA 2006) (child support enforcement action where there was "no connection between … litigation to enforce and require payment of child support and the real property") (Order at 6, 21); *Conseco Servs.*, 904 So. 2d at 440 (no viable equitable lien against homestead property under the circumstances) (Order at 21); *Tetrault v. Calkins*, 79 So. 3d 213, 216 (Fla. 2d DCA 2012) (adjacent owners seeking to restrict use of property for sale have no interest in the property to support *lis pendens*) (Order at 21).

[15] *United States v. Poulsen*, 2007 U.S. Dist. LEXIS 14500, at *6 (S.D. Ohio Feb. 28, 2007) cited in the Order at 22, also is not persuasive. The court there asked "whether § 853 permits *restraint* of substitute assets before conviction," the Government provided no response, and the order did not address state law. (Emphasis added).

[16] *Saadi* describes a process most similar to that contained within the federal forfeiture scheme.

Finally, the Order also overlooks that a central consideration for *lis pendens* under Florida law is to "warn future purchasers or encumbrancers that a suit is pending that could affect title in a given piece of property." *J.B.J. Inv. of S. Fla.*, 163 So. 3d at 728. As the Indictment makes plain, upon conviction, the Government intends to forfeit the property identified—including substitute property. The Order refers to substitute property as "property that the government concedes is not traceable, or connected in any way, to the pending lawsuit," and states, "it is undisputed that the substitute assets at issue were not involved or connected in any way with the criminality alleged in the indictment." Order at 6-7, 19. The Government does not agree. Just because assets at first are identified as substitute does not mean they were uninvolved or unconnected to criminality. The Government may simply be unaware of the tainted connection at the time of the Indictment. And absent *lis pendens*, third parties cannot properly evaluate risk. *E.g.*, *United States v. Galemmo*, 661 F. App'x 294, 298 (6th Cir. 2016) (red flags surrounding asset precludes third party from qualifying as *bona fide* purchaser); *accord In re Forfeiture Hr'g as to Caplin & Drysdale*, 837 F.2d 637, 647 (4th Cir. 1988) (*en banc*) ("[W]here an attorney chooses to accept payment in assets named in a forfeiture indictment or a huge cash sum, any later attempts to avoid knowledge would be insufficient to qualify the attorney as a bona fide purchaser."), *aff'd sub nom. Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989).

**II.     Under controlling Eleventh Circuit precedent, a Florida *lis pendens* is not a restraint.**

In addition, the Order erroneously asserts that "the Government urges this Court to ignore this widespread consensus setting clear limits to Governmental authority to restrain substitute assets under section 853 prior to a defendant's trial." Order at 14. Consistent with its prior briefing, the United States agrees with the Order that *lis pendens* are available only under state law, rather than federal law. *See also* Gov. Op. at 10 (addressing Florida law) *and* at 13 n.1 (noting Florida law applies because there is no federal *lis pendens* law); *accord Zokaites v. 3236 NE 5th St., Inc.*,

14

2007 WL 9706338, at *2 n.1 (S.D. Fla. Nov. 13, 2007) ("Because there is no federal *lis pendens* law, and this matter concerns real property located in Florida, Florida state law applies."). The Government sought to distinguish *lis pendens* from § 853(e) restraints only to address Defendants' assertion that Florida *lis pendens* improperly restrained substitute property in violation of the Sixth Amendment. *Compare* Defs. Mot. at 12-14 *with* Gov. Op. at 10-12. Yet the Order expressly declines to review Defendants' Sixth Amendment claim "because, as a threshold matter, the Government cannot establish that it had the statutory authority to file the pretrial notices of lis pendens on substitute property in the first place." Order at 14 n.7 (quoting *United States v. Kavalchuk*, 2010 U.S. Dist. LEXIS 16343, at *13 (D.N.H. Feb. 3, 2010), for the proposition that "whether a notice of lis pendens is less restrictive than a restraining order is immaterial" when a *lis pendens* is not authorized by state or federal law).[17]

   As the Government briefed, the Eleventh Circuit held in *Register* that a Florida *lis pendens* is not a restraint.[18] Gov. Op. 10-12. In *Register*, the defendant argued that *lis pendens* filed against Florida real properties prevented him from hiring his attorney of choice in violation of the Sixth Amendment, and that he was entitled to a hearing under the Fifth Amendment to determine whether the assets were untainted. 182 F.3d 820, 834 (11th Cir. 1999). The Eleventh Circuit

---

[17] The Court must address the Sixth Amendment for this issue to be ripe at this stage of the proceedings. *See* Gov. Op. at 5-10. In *Kavalchuk*, the case cited by the Order, the Government sought the district court's approval to comply with Massachusetts *lis pendens* law. *Kavalchuk*, 2010 U.S. Dist. LEXIS 16343, at *5. The Florida *lis pendens* statute does not require court approval to record a *lis pendens*.

[18] Despite law from other circuits, this Court is bound by *Register*, Eleventh Circuit precedent, "unless and until [such precedent] is overruled or undermined to the point of abrogation by the Supreme Court ...." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citation omitted); *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990) ("We need hardly add that even if there were a relevant circuit split, the district court is bound by controlling Eleventh Circuit precedent."). *Register* has not been overruled or undermined by the Supreme Court or the Eleventh Circuit *en banc*.

disagreed, stating that a *lis pendens*—under the same Florida statute at issue—was not a restraint:

> Here, prior to trial and the jury's finding of forfeitability, ***the government did not "seize," physically or otherwise, the property*** in which Charles Register claimed an ownership interest, and ***it did not obtain a restraining order*** from the district court preventing Charles Register from disposing of these parcels of real estate. Instead, the government filed a notice of lis pendens pursuant to Florida law, an action that had the effect of notifying the public (and in particular, prospective buyers or recipients of the land) that the government claimed an interest in the property.

*Id.* at 835-36 (emphasis added) (citing, *inter alia*, *Beefy King*, 464 F.2d at 1104). And the Eleventh Circuit summarized:

> In short, a filing of a lis pendens pursuant to state statute does not constitute a "seizure" and does not affect property interests to an extent significant enough to implicate the Due Process Clause of the Fifth Amendment.

*Id.* at 837.

The Order seeks to distinguish *Register* by stating that the case did not involve substitute property. Order at 14-16. The Order also contends that "nothing in the *Register* ruling provides support for the Government's assumption that the meaning of a 'restraint' in the Fifth Amendment context can be—and must be—conflated to the meaning of a 'restraint' in the section 853 context."[19] *Id.* at 16. "[W]e are hard pressed to agree with the necessary implications of the Government's position: namely, that nothing short of a seizure, taking, or deprivation of property can amount to a restraint for the purposes of section 853(p) substitute assets." *Id.* (citing *Beefy King* and Florida cases).

---

[19] Another court that considered this question found that *lis pendens* not to be a restraint under 21 U.S.C. § 853. *See United States v. Lebed*, 2005 WL 2495843, at *10 (E.D. Pa. Oct. 7, 2005) ("[I]n the context of forfeiture *lis pendens* simply do not rise to the level of restraint or seizure as set forth in 21 U.S.C. § 853(e), the relevant forfeiture procedures for pretrial restraint set forth under § 2461(c). Because we hold that *lis pendens* do not amount to an impermissible restraint on Defendants' assets, Defendants' Motion for the Discharge of Certain *Lis Pendens* is denied.") (citing, *inter alia*, *Register*).

In summarily setting aside Eleventh Circuit precedent in *Register*, the Order fails to recognize that *Register* acknowledged "'[t]he effect of a lis pendens on the owner of property ... is constraining. For all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of the lawsuit.' Still, 'the right to alienate the property ... exist[s].'" *Register*, 182 F.3d at 836 (citing *Beefy King*, 464 F.2d at 1104, and *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1323 (3d Cir. 1982)). Whatever the nature of the property (tainted or substitute), the Eleventh Circuit's observations apply because the effect is the same. Nor does the Order address the circuit cases cited in the Government's Opposition that also have found that a Florida *lis pendens* is not a restraint on property, whether tainted or substitute. *See* Gov. Op. 11-13; *see United States v. Bohning*, 321 F. App'x 855, 858 (11th Cir. 2009) (following *Register* and holding "Bohning was not entitled to a hearing with regard to the *lis pendens* on his residence, as it did not constitute a seizure."); *see also, e.g.*, *United States v. Thomas*, 440 F. App'x 148, 152 (3d Cir. 2011) ("*lis pendens* were not impermissible pretrial restraints on an owner's ability to alienate property" including, *inter alia*, on a substitute asset, because a "*lis pendens* simply serves to notify," it "does not prevent the sale of the property, nor is it a lien on the property," it did not constitute "impermissible pretrial restraints on an owner's ability to alienate property," and defendant "was free to liquidate the properties as he saw fit.") (citations omitted); *United States v. Thomas*, 750 F. App'x 120, 125 (3d Cir. 2018) (post-*Luis*, revisiting prior decision and declining to change its 2011 holding); *United States v. Balsiger*, 910 F.3d 942, 950-51 (7th Cir. 2018) (post-*Luis* decision finding *lis pendens* recorded on the defendant's residence—an "untainted asset"—did not infringe

on Sixth Amendment rights).[20] Often, the Order relies on cases that involved actual *restraints*—protective orders, restraining orders, and injunctions—not *lis pendens*, making unclear how the Government's "view is simply inconsistent with the holdings of multiple federal Circuit Courts."[21]

The Order, in contravention of *Register*, appears to conclude that a *lis pendens* is a restraint, using the terms interchangeably. For example, the Order represents that the Sixth Circuit found in *Parrett* that "**a notice of lis pendens** 'may not be **filed** on substitute assets under 21 U.S.C. § 853 prior to the entry of the order of forfeiture.'" Order at 9 (purportedly quoting *Parrett*, 530 F.3d at 432) (bold emphasis added). In contrast, the *Parrett* decision reads: "[W]e further hold that **restraints** may not be **placed** on substitute assets under 21 U.S.C. § 853 prior to the entry of the order of forfeiture." *Parrett*, 530 F.3d at 432 (bold emphasis added). In doing so, the Order errs in improperly applying controlling Eleventh Circuit precedent. *See Register*, 182 F.3d at 835-37; *see also James Daniel Good Real Prop.*, 510 U.S. at 58 (distinguishing restraints and *lis pendens*).

## III.   Without Defendants' showing of need, *Luis*'s holding does not apply.

The Order seeks to avoid applying binding circuit precedent by relying on *Luis*, arguing "the crucial distinction between forfeitable and substitute assets highlighted by the Supreme Court in *Luis*—an issue central to this dispute—was simply immaterial and unaddressed in *Register*."

---

[20] Indeed, the Order failed to acknowledge that Chief Magistrate Judge Torres previously recognized *Register*'s holding, that a *lis pendens* is not a restraint. *See* Gov. Op. at 11 (citing Order, at 7, Feb. 14, 2020, ECF No. 181, *United States v. Guruceaga et al.*, Case No. 18-cr-20685 (S.D. Fla.) (Torres, J.) (following *Register* and *Bohning* and declining to lift *lis pendens* on substitute property because "the notices of lis pendens are not a seizure of their properties")).

[21] *Compare* Order 9-10 *with United States v. Chamberlain*, 868 F.3d 290, 293 (4th Cir. 2017) (restraining order under § 853(e)(1)(A)); *United States v. Floyd*, 992 F.2d 498, 499 (5th Cir. 1993) (protective order under § 853(e)(1)(A)); *United States v. Ripinsky*, 20 F.3d 359, 360 (9th Cir. 1994) (two restraining orders converted into a preliminary injunction under § 853); *United States v. Gotti*, 155 F.3d 144, 146 (2d Cir. 1998) (pretrial restraining order under 18 U.S.C. § 1963(d)(1)(A)); *In re Assets of Martin*, 1 F.3d 1351, 1354 (3d Cir. 1993) (TRO under § 1963(d)(2) and pre-indictment preliminary injunction under § 1963(d)(1)(B)).

Order at 15. But absent Defendants' showing of need, *Luis*'s holding does not apply and its reasoning only confirms the Government's interest in substitute property.

As previously briefed, the question presented in *Luis* was whether the pretrial restraint of substitute property *needed* to retain counsel of choice violates the Fifth and Sixth Amendments. *See* Gov. Op. at 5-8. In *Luis*, a plurality of four justices sought to balance the Government's interest in substitute property against a defendant's Sixth Amendment right to counsel of choice. *Luis*, 578 U.S. at 7-22. To do so, they distinguished between tainted assets and substitute property, adding "that the constitutional line we have drawn should prove workable." *Id.* at 22.

The Government noted in its Opposition that the Supreme Court in *Luis* recognized "important" governmental interests in substitute property. Gov. Op. at 15-16 (quoting *Luis*, 578 U.S. at 18-19). In response, the Order misreads *Luis*, and errs in concluding that the decision shows that the Government's "interest is simply non-existent here…." *See* Order at 20. The Order offers the oft-quoted line from *Luis* of "this distinction between forfeitable and substitute assets is 'an important one, not a technicality. It is the difference between what is yours and what is mine.'" *Id.* at 11 (quoting *Luis*, 578 U.S. at 16). But the Order ignores the end of that same discussion in *Luis*, where the Supreme Court stated:

> This distinction between (1) what is primarily "mine" (the defendant's) and (2) what is primarily "yours" (the Government's) **does not by itself answer the constitutional question posed, for the law of property sometimes allows a person without a present interest in a piece of property to impose restrictions upon a current owner, say, to prevent waste.**

*Luis*, 578 U.S. at 17-18 (bold emphasis added).

Indeed, seven justices in *Luis* confirmed the Government's interest in substitute property.[22]

---

[22] Only Justice Thomas did not address the Government's interest because he did "not agree with the plurality's balancing approach." *Luis*, 578 U.S. at 24-25 (Thomas, J. concurring).

The plurality characterized the Government's interest in substitute property as analogous to "a contingent, future executory interest in property," while three dissenting justices viewed the Government's interest as the same in tainted and substitute property. *Compare id.* at 18 *with id.* at 42 (Kennedy, J. dissenting, joined by Alito, J.) *and id.* at 52-53 (Kagan, J. dissenting) ("But as the principal dissent shows, the Government's and the defendant's respective legal interests in those two kinds of property, prior to a judgment of guilt, are exactly the same: The defendant maintains ownership of either type, with the Government holding only a contingent interest.").

The Order also seeks to limit the Supreme Court's recognition of the Government's interest in substitute property because the restraint at issue in *Luis*—under 18 U.S.C. § 1345—is only authorized for healthcare fraud or banking law[23] violations. *See* Order at 19-21. But *Luis* is not so narrow. In fact, nowhere in the decision does the Supreme Court suggest that the Government's interest in substitute property depends on the criminal charge(s). Rather, the interest that the Court found "important" included "the Government's contingent interest in securing its punishment of choice (namely, criminal forfeiture)[.]" *Luis*, 578 U.S. at 19. Such interest exists in every criminal case, and supports the fair nexus required under Florida *lis pendens* law.

## CONCLUSION

For these reasons, the Order erroneously concluded that *lis pendens* recorded on substitute Florida real properties should be dissolved, contrary to Florida law, Eleventh Circuit precedent, and the Supreme Court's decision in *Luis*. The Court should reject the Order and deny the Motion. The Government requests oral argument.

---

[23] The Order (at 20) references "banking fraud cases" but a § 1345 restraint is available for "banking law violations," which include money laundering in violation of 18 U.S.C. § 1957 or 1957. 18 U.S.C. § 1345(a)(1)(B); 18 U.S.C. § 3322(d)(1)(A).

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   */s/ Joshua Paster and Nalina Sombuntham*
      Joshua Paster, Court ID No. A5502616
      Nalina Sombuntham, Fla. Bar No. 96139
      Harold E. Schimkat, Court ID No. A5500567
      Assistant United States Attorneys
      99 N.E. 4th Street
      Miami, Florida 33132-2111
      Telephone: (305) 961-9224 / (305) 961-9342
      Facsimile: (305) 536-4089
      joshua.paster@usdoj.gov
      nalina.sombuntham@usdoj.gov
      harold.schimkat@usdoj.gov
      *Counsel for United States of America*