UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20552-GAYLES/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

    Defendants.
_____/

**UNITED STATES' RESPONSE TO DAVID RIVERA AND ESTHER NUHFER'S JOINT MOTION TO VACATE *EX-PARTE* PROTECTIVE ORDER AND FOR BRIEFING ORDER [ECF NO. 85]**

The United States of America, by and through the undersigned Assistant United States Attorneys, files this response to *David Rivera and Esther Nuhfer's Joint Motion To Vacate* Ex-Parte *Protective Order and for Briefing Order* ("Motion") [ECF No. 85]. The Motion makes three requests: (1) it asks the Court to vacate the Second Protective Order for Assets Subject to Forfeiture ("Second Protective Order") [ECF No. 82], which the Court entered on July 20, 2023; (2) it requests 30 days to file a response to the United States' *Ex Parte* Application for Second Post-Indictment Protective Order Pursuant to 21 U.S.C. § 853(e) ("Application") [ECF Nos. 79, 80],[1] which was submitted on July 14, 2023; and (3) it requests 30 days to respond to the United States' Objections to, or in the Alternative Appeal of, Chief Magistrate Judge Torres's Orders

---

[1] The United States submitted the Application *ex parte* but not under seal. In accordance with the Local Rules, the Clerk of the Courts restricted the filing from public view and the docket reflects a restricted filing has been made. *See* S.D. Fla. L.R. 5.4(d) (also stating that "Counsel need not serve motions filed ex parte and related documents unless and until the Court so orders"); S.D. Fla. L.R. 5.4(e)(2) ("Access to ex parte motions and related filings will remain restricted unless the Court orders otherwise."). Because it is a restricted document, it is unclear whether the Application has been docketed at ECF No. 79 or ECF No. 80, and in an abundance of caution, the Government cites both.

("Objections"), which was filed on July 20, 2023 [ECF No. 83].

The United States opposes Defendants' request to vacate the Second Protective Order because after indictment, the appropriate time for their proposed challenge would be post-restraint. For this reason and the reasons set forth in more detail below, the United States opposes Defendants' requests, and the Court should deny the Motion.

I.       RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2022, a Grand Jury sitting in the Southern District of Florida returned an Indictment charging Defendants David Rivera ("Rivera") and Esther Nuhfer ("Nuhfer") in Count 1 with conspiracy to commit an offense against the United States, that is, failure to register as a foreign agent, in violation of 18 U.S.C. § 371 and 22 U.S.C. §§ 612(a), 618(a)(1), in Count 2 with failure to register as a foreign agent, in violation of 22 U.S.C. §§ 612(a) and 618(a)(1), in Count 3 with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and in Counts 4-8 with engaging in transactions in criminally derived property of a value greater than $10,000, in violation of 18 U.S.C. § 1957. Indictment, ECF No. 3.

The Indictment alleged that Rivera and Nuhfer conspired to unlawfully enrich themselves by engaging in political activities in the United States on behalf of the Government of Venezuela, and by representing Venezuelan governmental interests before U.S. officials, to try to influence U.S. foreign policy toward Venezuela. It also alleged that to conceal these efforts, Defendants failed to register under the Foreign Agents Registration Act ("FARA") as agents of the Venezuelan government and created the false appearance that they were providing consulting services to PDV USA Inc., a wholly owned subsidiary of the Venezuelan state-owned and state-controlled oil company, Petroleos de Venezuela, S.A. ("PDVSA"). *Id.* at 4-27. As part of this conspiracy, between late March and late October 2017, over $20 million in U.S. currency was transferred to

Interamerican Consulting, Inc., which Rivera divided among himself, Nuhfer, and others. *Id.* at 8, 10, 13, 13-14, 16-17, 25, 27. From in or around February 2017 through in or around December 2018, Defendants conspired to launder these proceeds, engaging in monetary transactions in criminally derived property of a value greater than $10,000. *Id.* at 28-31.

The Indictment also contained forfeiture allegations, which provided that upon conviction of a violation of, or conspiracy to violate, 22 U.S.C. §§ 612(a) and 618(a)(1), Defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C). *Id.* at 31. The forfeiture allegations also provided that upon conviction of a violation of 18 U.S.C. §§ 1956 and/or 1957, Defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). *Id.*

The forfeiture allegations then listed these five specific assets alleged to be subject to forfeiture as directly forfeiture assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1):

   a. Wells Fargo Securities brokerage account no. 6423-2614, held in the name of Esther Nuhfer;

   b. Real property located at 2665 S.W. 37th Avenue, Unit 504, Miami, Florida 33133;

   c. Real property located at 1673 Pink Dogwood Way, Oviedo, Florida 32765;

   d. Real property located at 21 Sadowski Causeway, Key Colony Beach, Florida 33051; and

   e. Real property located at 10925 N.W. 43rd Lane, Doral, Florida 33178.

*Id.* at 32. Before its deliberations, the Grand Jury specifically was instructed that, upon a finding of probable cause to support the offenses charged in the Indictment, it should also determine whether there is a probable cause to support that the specific assets listed above are subject to forfeiture as alleged in the Indictment. The Grand Jury then returned the Indictment.

Based on the Grand Jury's probable cause finding, the United States sought, and the Court entered on November 21, 2022, a protective order restraining the above-listed assets to preserve their availability for criminal forfeiture.  First Protective Order, ECF No. 8.

The forfeiture allegations of the Indictment also specifically identified other assets alleged to be subject to forfeiture as substitute property pursuant to 21 U.S.C. § 853(p).  *See* Indictment 33. The Government recorded *lis pendens* on all real properties, under Florida and Georgia law. *See* Notice of Filing, ECF No. 55.

In December 2022, Defendants made their initial appearances.  *See* Minute Order, Dec. 8, 2022, ECF No. 13 (Nuhfer); Minute Order, Dec. 20, 2022, ECF No. 29 (Rivera).

Defendants' temporary counsel then contacted the United States about the *lis pendens* on real properties then-identified as substitute in the Indictment, asking for their release to pay for counsel to permanently appear.  The Government consistently stated that it would consider releasing *lis pendens* if Defendants showed that they needed substitute property to retain counsel. Defendants declined to address the availability of their other assets identified by the Government or make any showing of financial need, beyond a bare offer by counsel to state there was a need.

On February 10, 2023, counsel for Defendants each filed a "limited appearance … to litigate the propriety of the government placing *lis pendens* on [Defendants'] innocent 'substitute assets.'"  ECF Nos. 37, 38, and 40.

On March 13, 2023, under the Court's briefing schedule, Defendants filed a motion requesting the release of *lis pendens* on some substitute property to pay for their attorneys' fees. ECF No. 54.  The United States responded on April 4, 2023 [ECF No. 56], and, after several extensions, Defendants filed their reply on May 30, 2023 [ECF No. 68].  On June 13, 2023, Rivera filed a notice of supplemental authority.  ECF No. 69.

4

On June 22, 2023, Defendants made an unopposed request to continue the hearing for report re: counsel and arraignment based on the *lis pendens* litigation, which the Court granted. ECF Nos. 70, 72.  The hearing for report re: counsel and arraignment of Defendants is scheduled for August 14, 2023.  ECF No. 72.

On July 6, 2023, Chief Magistrate Judge Edwin G. Torres issued an order, granting Defendants' request to release the Government's *lis pendens* recorded on two of Rivera's real properties: (a) 3663 S. Atlantic Ave, Unit 20C, New Smyrna Beach, Florida 32169; and (f) 549 Bethesda Court, Oviedo, Florida 32765.[2]  ECF No. 75.

On July 7, 2023, based on Nuhfer's unopposed motion, Chief Magistrate Judge Torres extended the release of *lis pendens* to three of her real properties: (b) 9425 S.W. 38th Street, Miami, Florida 33165 (Nuhfer); (c) 82 Tingler Lane, Marathon, Florida 33050 (Nuhfer); and (g) 13604 S.W. 83rd Court, Palmetto Bay, Florida 33158 (Nuhfer).  ECF Nos. 76, 78.

Between July 7 and 13, 2023, the parties exchanged several emails regarding Chief Magistrate Judge Torres's rulings, in which the Government first requested Defendants' position on staying the orders to release *lis pendens*.[3]  Defendants' counsel repeatedly objected to any stay.[4]

---

[2] The lettering here reflects how these assets were identified in the Indictment.  Defendants did not ask the Court to release *lis pendens* for Rivera's two real properties in Georgia: (e) 3060 Fleet Street, Marietta, Georgia 30064 (Rivera); (5) 549 Bethesda Court, Oviedo, Florida 32765 (Rivera); and (h) 2188 Ellis Mountain Drive, S.W., Marietta, Georgia 30064 (Rivera).

[3] The Motion makes a number of unfounded allegations against the Government based on an erroneous timeline.  In light of these allegations, the Government has summarized the email communications between the parties since the entry of Chief Magistrate Judge Torres's orders.  Should the Court request the communications in their entirety, they are on file with undersigned counsel as noted.

[4] During these communications, undersigned counsel advised Defendants of caselaw supporting Chief Magistrate Judge Torres's rulings being treated as a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and advised that the rulings would need to be adopted by the Court to have effect.  The United States has since filed Objections on that basis.  *See* ECF No. 83.

Undersigned counsel also informed counsel for Defendants that the Government was working on several matters, including considering next steps with respect to the rulings and reviewing the real properties at issue. *See* 7/7/2023-7/13/2023 email correspondence (on file with undersigned counsel).

Upon further investigation, the United States discovered that these three real properties first identified as substitute property are directly subject to forfeiture as a result of the offenses charged in the Indictment (collectively, the "Subject Assets"):

(i) Real property located at 3663 S. Atlantic Avenue, Unit 20C, New Smyrna Beach, Florida 32169;

(ii) Real property located at 9425 S.W. 38th Street, Miami, Florida 33165; and

(iii) Real property located at 82 Tingler Lane, Marathon, Florida 33050.

*Id.*

On July 14, 2023, because such property was not presented to the Grand Jury for a probable cause determination, the United States submitted an *ex parte* Application, requesting issuance of the second protective order. *See* Gov't Application, ECF Nos. 79, 80. The Application included an agent's declaration and attachments of charts detailing the tracing that showed how each of the Subject Assets was purchased with FARA proceeds in transactions of greater than $10,000 in criminally derived property. *See id.* In light of the litigation over the Subject Assets, the United States included with its Application a copy of Chief Magistrate Judge Torres's rulings, and also asked the Court to authorize the release of the Application to counsel for Defendants upon entry of the second protective order. *See id.* (including Chief Magistrate Judge Torres's rulings attached in Exhibit B).

The same day, undersigned counsel informed counsel for Defendants that the United States' position had changed with respect to the Subject Assets; the Government now considered

the Subject Assets to be subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and not substitute property.  *See* 7/14/2023 email correspondence (on file).

On July 17, 2023, counsel for Defendants voiced their opposition, and responded that "[i]f you to take any further action regarding these properties other than to lift the lis pendens, we seek a meeting with the chief of the criminal division and with the U.S. Attorney."  They asked the undersigned counsel to convey the message to the appropriate party at the U.S. Attorney's Office.  *See* 7/17/2023 email correspondence (on file).  At the time of Defendants' request, the United States already had submitted the *ex parte* Application to the Court.  *See* ECF Nos. 79, 80 (docket entry on July 14, 2023).

On July 18, 2023, undersigned counsel included Chief of the Asset Forfeiture Division on the email correspondence between the parties, and on July 20, 2023 the Chief of the Criminal Division was also included on the email correspondence.  In these emails, the Government advised counsel for Defendants that given the ongoing litigation, the United States is seeking court approval to disclose the tracing to the Subject Assets.  *See* 7/18/2023-7/20/2023 email correspondence (on file).

On July 20, 2023, at around 3:22 p.m., counsel for Defendants again requested a meeting with the U.S. Attorney "prior to the government reclassifying the subject properties from innocent to tainted. We are also still requesting that you provide us with the new evidence that you have to trace the criminal proceeds to these properties." *See* 7/20/2023 email correspondence (on file).

The same day, at around 4:09 p.m., the undersigned counsel received an email with the Second Protective Order.  *See id.*

Within 30 minutes, at around 4:34 p.m., the undersigned counsel sent counsel for the Defendants the Second Protective Order, a copy of the Application, and a color version of the

7

tracing charts. The undersigned counsel also stated that the United States obtained the Second Protective Order at around 4 p.m. that day, which authorized the release of the Application to counsel for Defendants. *See id.*

At around 4:55 p.m., the United States filed its Objections [ECF No. 83], which was within 14 days of Magistrate Judge Torres's initial order [ECF No. 75] releasing the *lis pendens*. *See id.*

At around 4:56 p.m., counsel for Defendants responded to undersigned counsel's email providing the Second Protective Order, and advised they would be seeking Court intervention. *See id.*

On July 21, 2023, Defendants filed the Motion. *See* ECF No. 85. On July 24, 2023, Defendants demanded discovery. *See* 7/24/2023 letter (on file).

## II. DISCUSSION

### A. Defendants' Proposed Challenge to the Second Protective Order Must Be Post-Restraint and Requires a Threshold Showing of Need

The United States routinely seeks *ex parte* the restraint (or seizure) of tainted assets subject to forfeiture, as supported by Eleventh Circuit precedent, 21 U.S.C. § 853(e), and the statute's legislative history. After indictment, Defendants are not entitled to a *pre-restraint* hearing, and the entry of the Second Protective Order sets up the challenge they seek – a *post-restraint*, adversarial hearing. To obtain a *post-restraint* adversarial hearing, however, Defendants must first establish as a threshold matter that restrained assets are needed to retain permanent counsel.

This long-established procedure first set forth in *United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989), repeatedly has been endorsed by the Eleventh Circuit, including as recently as this year. *See United States v. Gosney*, 2023 WL 1434183, at *4 (11th Cir. Feb. 1, 2023) (citing *Bissell*), *cert. denied,* No. 22-1065, 2023 WL 3802917 (U.S. June 5, 2023). Section 853(e) authorizes the Court to issue restraints *ex parte*, upon application of the United States and based

8

on probable cause.  21 U.S.C. § 853(e); *see also Bissell,* 866 F.2d at 1349 ("These restraining order provisions do not, on their face, require a hearing either prior to, or after, the imposition of restraints on defendants' assets.") (citing 21 U.S.C. § 853(e)(1)(A) and (f)); *United States v. Kaley*, 677 F.3d 1316, 1321 (11th Cir. 2012) ("*Kaley II*") ("[T]he forfeiture statute at issue, 21 U.S.C. § 853, does not require a hearing for the issuance or continuation of a post-indictment restraining order."), *aff'd and remanded*, 571 U.S. 320 (2014).  Probable cause determinations (*e.g.*, by the grand jury and judges) generally are made *ex parte*, and seizure warrants, a more robust form of restraint, are also pursued *ex parte*.  *See, e.g.*, 21 U.S.C. § 853(f); Fed. R. Crim. P. 41; *accord United States v. Melrose E. Subdivision,* 357 F.3d 493, 504 (5th Cir. 2004) ("Both Congress and the Constitution see pretrial restraining orders as preferable, somewhat less restrictive alternatives to outright seizure. It would frustrate that preference were the government able to seize property more easily than it could restrain it.") (internal citations omitted).

Congress recognized that a pre-restraint hearing would undermine criminal forfeiture.  It sought to encourage post-indictment restraining orders by not requiring notice or hearing.  *See* S. Rep. 98-225, at 203 (1984) (discussing amendments to 18 U.S.C. § 1963, which contains the same provisions as current 21 U.S.C. § 853(e)).  It viewed "allow[ing] the courts to entertain challenges to the validity of the indictment, and requir[ing] the Government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance trial in order to obtain an order restraining the defendant's transfer of property alleged to be forfeitable in the indictment" as making obtaining a restraining order "quite difficult" and "inadvisable from the prosecutor's point of view."  *See id.* at 196; *see also Kaley II*, 677 F.3d at 1321 (reviewing § 853(e) and concluding that the difference between the statute's *pre-* and *post-indictment* restraint provisions "unambiguously demonstrates that Congress contemplated the issue of a [pre-restraint]

9

hearing, but decided not to require one post-indictment.").

But as the Eleventh Circuit noted in *Bissell*: "The statute's legislative history reveals that while Congress did not intend for there to be a hearing prior to the issuance of a restraint, the district court does retain authority to hold a post-restraint hearing." 866 F.2d at 1349 (citing S. Rep. 98-225, at 203). "At that hearing, the defendant may undertake to prove that the government wrongfully restrained specific assets which are outside the scope of the indictment, not derived from, or used in, criminal activity, but may not challenge the validity of the indictment itself and thus require that the government present its evidence before trial." *Id.*

However, Defendants are not automatically entitled to such hearing. To begin, Defendants must first establish that they have a financial need for the restrained assets to retain permanent counsel.[5] *See Gosney*, 2023 WL 1434183, at *4; *United States v. Kaley*, 579 F.3d 1246, 1252 (11th Cir. 2009) ("*Kaley I*") (also citing *Bissell*); *see also United States v. Hernandez-Gonzalez*, 2017 WL 2954676, at *7 (S.D. Fla. June 26, 2017) (denying defendant's request to release funds to pay for his legal defense where there was no evidence that defendant and his family lacked the funds to retain counsel of his choice). Once Defendants establish this threshold burden, the Court then applies the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1970), to determine whether a post-indictment hearing is warranted. *See Gosney*, 2023 WL 1434183, at *4 ("In *Bissell*,

---

[5] In a line of cases that have become known as "*Jones-Farmer*" after the two leading decisions from the Tenth and Fourth Circuits, other courts require the same threshold showing of need. *See United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) (financial need to retain counsel required otherwise there is no private interest that would outweigh the Government's interest in restraint); *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001); *see also, e.g.*, *United States v. Bonventre*, 720 F.3d 126, 128, 130-131 (2d Cir. 2013) (adopting *Jones*); *United States v. Jamieson*, 427 F.3d 394, 407 (6th Cir. 2005) (finding no issue with district court's application of *Jones*); *United States v. Yusuf*, 199 F. App'x 127, 132 (3d Cir. 2006) (instructing the district court to apply *Jones* on remand); *see also United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1988) (predating *Jones-Farmer* but also requiring defendant to show financial need for post-restraint hearing).

we clearly held that a defendant whose assets are restrained pursuant to a criminal forfeiture charge in an indictment, rendering him unable to afford counsel of choice, is entitled to a pretrial hearing only if the balancing test in *Barker* is satisfied."); *Kaley I*, 579 F.3d at 1252 (also citing *Bissell*). Under *Barker*, the Court must weigh these four factors: "(1) the length of the delay before the defendants received their post-restraint hearing; (2) the reason for the delay; (3) the defendants' assertion of the right to such a hearing pretrial; and (4) the prejudice the defendants suffered due to the delay weighed against the strength of the United States'[ ] interest in the subject property." *Gosney*, 2023 WL 1434183, at *4 (quoting *Kaley I*, 579 F.3d at 1254). If these factors weigh in Defendants' favor, the Due Process Clause provides them a post-restraint hearing. *See Kaley II*, 677 F.3d at 1321 (stating, "the only pretrial hearing required is one provided under the Due Process Clause").

Here, based on the Application, the Court found probable cause to restrain the Subject Assets, which are three real properties first identified as substitute property in the Indictment.[6] *See* Gov't Application, ECF Nos. 79, 80; Second Protective Order, ECF No. 82; *see also Gosney*, 2023 WL 1434183, at *3 (upholding protective order restraining account funds identified post-indictment as being subject to forfeiture) (cited in Application at 6). As the Government noted in its Application, the Subject Assets are among the five real properties for which Defendants have sought the release of *lis pendens*. *See* Gov't Application 4 n.2 (also providing Chief Magistrate Judge Torres's orders releasing *lis pendens* as Exhibit B). The United States sought the Second

---

[6] As the undersigned counsel previously shared with Defendants' counsel, at the time of Indictment, the Government had not yet traced the three properties to the charged offenses. The Government has since completed that tracing. The Government always continues to investigate whether assets are connected to the charged crimes, and the law contemplates us pursuing additional directly forfeitable assets after indictment. The Government has never stated that any of the assets identified as substitute property in the Indictment are "innocent" assets. *See* 7/18/2023 email correspondence (on file with undersigned counsel).

11

Protective Order after Defendants would not agree to stay Judge Torres's rulings pending further litigation. *See supra* 5. Because of this litigation, and anticipating Defendants' eventual challenge, the United States specifically sought the release of the Application to Defendants' counsel, which it promptly produced upon entry of the Second Protective Order. *See supra* 7-8.

Should Defendants wish to proceed, having the Second Protective Order in place provides Defendants the opportunity to challenge the forfeitability of the Subject Assets. In accordance with *Bissell* and its progeny, that challenge first would require Defendants each to demonstrate a financial need for the restrained assets to retain permanent counsel, and the Court to determine that a post-restraint hearing is warranted under the *Barker* factors. In their Motion, Defendants have not endeavored to show need or that the *Barker* factors weigh in their favor.

Defendants' requested litigation not only would circumvent this well-established procedure, but also would disserve the collective goal of avoiding unnecessary delay of the criminal case. With the Second Protective Order in place, there would be no need for the briefing order requested by Defendants as the Application is not pending. Defendants still could make their challenge within 30 days, while the Subject Assets remain restrained and available for criminal forfeiture. The Court should deny Defendants' requests to vacate the Second Protective Order and for a briefing order to respond in 30 days to the Application.

### B. Defendants Provide No Basis for Their Requested Extension To Respond to the Government's Objections

Defendants also request 30 days to respond to the United States' Objections to Chief Magistrate Judge Torres's orders releasing *lis pendens*. Whether the Court considers these rulings an "order" under 28 U.S.C. § 636(b)(1)(A) (as Defendants assert) or "a report and recommendation" under 28 U.S.C. § 636(b)(1)(B) (as the United States has briefed), Local Magistrate Rule 4 affords Defendants 14 days to respond. Defendants did not confer with the

United States before filing.  *Cf.* S.D. Fla. L.R. 88.9(a).  Although the United States would not oppose an extension if needed, Defendants have not provided justification for their request.  *See* Motion 2 (requesting 30 days to respond to both the Application and the Objections and only stating that "both of which involve similar issues, facts, and properties").

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny the Motion.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  */s/ Joshua Paster and Nalina Sombuntham*
Joshua Paster, Court ID No. A5502616
Nalina Sombuntham, Fla. Bar No. 96139
Assistant United States Attorneys
99 N.E. 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9224 / (305) 961-9342
Facsimile: (305) 536-4089
joshua.paster@usdoj.gov
nalina.sombuntham@usdoj.gov
*Counsel for United States of America*