**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

<u>**Case No. 22-CR-20552-Damian/Torres**</u>

**UNITED STATES OF AMERICA**

**vs.**

**DAVID RIVERA and
ESTHER NUHFER,**

      **Defendants.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS COUNTS 1–8 OF THE INDICTMENT</u>**

**Introduction**

In seeking dismissal of Counts 1–8 of the Superseding Indictment (DE 283, hereinafter "Mot."), defendants ask this Court to do what no other has done over the course of the last 75 years.   That is, they seek to have this Court declare unconstitutional core provisions of the Foreign Agents Registration Act (FARA), in their entirety, on First Amendment grounds.   Their primary argument is that the requirement to register as an agent of a foreign principal under FARA operates as an unjustified, content-based, prior-restraint on speech.   Defendants, however, cite no legal authority that supports their position, instead invoking general free-speech principles from cases that are factually and legally irrelevant because the laws in those cases *in fact prohibited speech*. FARA registration, by contrast, does not prohibit speech at all.   It merely requires disclosure of basic information by those who engage in political advocacy (or other registrable conduct) on behalf of a foreign principal, so the public may better understand their actions and underlying purposes.   In reviewing challenges to FARA (and analogous laws in the lobbying and campaign-finance contexts), courts have held that such disclosure requirements serve a critical interest in ensuring the public is informed, and that they satisfy the First Amendment.

As a secondary argument, defendants also claim that FARA is void for vagueness—on its face—based solely on asserted unclarity in FARA's registration exemption for persons who "engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of [a] foreign principal; or (2) in other activities not serving predominantly a foreign interest."   22 U.S.C. § 613(d).   This challenge also fails.   First, binding precedent holds that a litigant is barred from asserting a facial vagueness challenge to a statute when, as here, it is clear that it prohibited her own conduct.   *See United States v. Di Pietro*, 615 F.3d 1369, 1372 (11th Cir. 2010).   Here, the allegations against defendants describe a covert lobbying campaign instituted

1

by the Venezuelan government to shape U.S. policy in its favor.   Because such conduct obviously does not satisfy the exemption, precedent forecloses defendants' vagueness challenge.   In any event, FARA's provisions are sufficiently precise to afford fair notice and avoid arbitrary enforcement, as the courts that have rejected vagueness challenges to FARA have recognized.

### The Foreign Agents Registration Act

In 1938, amid rising concerns regarding the efforts of adversary governments to influence the American public, Congress enacted FARA to address the problem of "persons employed by [foreign] agencies to disseminate propaganda in the United States" and required certain covered persons to register with the U.S. government.   Pub. L. No. 75-583, 52 Stat. 631, 632 (1939); *see also FARA: Background and Issues for Congress*, Congressional Research Service Report R46435 (June 30, 2020), at 1–4 ("CRS Report") (discussing FARA's legislative history).

In 1966, Congress amended FARA in several pertinent respects in response to increased efforts by foreign governments to influence U.S. policy through lobbying-related activities. These amendments included (1) refining the types of agency relationships requiring registration under FARA; and (2) updating the categories of activities for which foreign agents must register. *See* Pub. L. No. 89-486, 80 Stat. 244 (1966).   To that end, the 1966 amendment defined, in relevant part, an "agent of a foreign principal" to mean "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal" and who engages in certain covered activities.   *Id.*

Regarding registrable activities, the amendment defined an "agent of a foreign principal" as a person with the requisite agency relationship who, within the United States: (i) "engages . . .

2

in political activities[1] for or in the interests of such foreign principal"; (ii) "acts . . . as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal"; (iii) "solicits, collects, disburses, or dispenses . . . money[] or other things of value for or in the interest of such foreign principal"; or (iv) "represents the interests of such foreign principal before any agency or official of the Government of the United States."  *Id.*; *see also* 22 U.S.C. § 611 (defining various operative terms in FARA).

In enacting these changes (among others) to FARA in 1966, Congress intended:

[T]o protect the interests of the United States by requiring complete public disclosure by persons acting for or in the interests of foreign principals where their activities are political in nature or border on the political.   Such public disclosures . . . will permit the Government and the people of the United States to be informed as to the identities of such persons and so be better able to appraise them and the purposes for which they act.

CRS Report at 8–10 (quoting House report and discussing subsequent legislative history).

Under the statute, a person who acts as an agent of a foreign principal is not restricted in any activities or speech, but simply must submit a registration statement to the Department of Justice (DOJ) within ten days of the start of the agent relationship.  *See* 22 U.S.C. § 612(a). FARA requires that certain information be disclosed in the registration statement (*e.g.*, the identity of the foreign principal, a description of the registrant's activities, and the amounts of any related compensation), and that supplements be filed at six-month intervals.  *Id.* § 612(a)–(b).

To promote compliance, the Attorney General is authorized to issue regulations "necessary to carry out the provisions of [FARA]."  *Id.* § 620.   Willful violations of "any provision of

---

[1] FARA further defines covered "political activities" to include any activity intended to "in any way influence any agency or official of [the government] or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country . . . ."   22 U.S.C. § 611(o).

3

[FARA] or any regulation thereunder" are subject to criminal punishment.  *Id.* § 618(a)(1).

### Factual Background

In December 2023, a grand jury in this District returned the superseding indictment charging defendants with FARA and related money laundering violations.  ECF 122.  The indictment describes a conspiracy to engage in unregistered political activities in the United States on behalf of the Venezuelan government, and to represent that government's interests before U.S. officials, in an effort to influence U.S. foreign policy and garner support for the normalization of U.S.-Venezuela relations.  Among other things, the conspiracy involved pursuing the resolution of a legal dispute between Venezuela and a major U.S. oil company, and the avoidance of further economic sanctions against high-level members of the Maduro regime, in connection with which defendants interacted with U.S. officials and others while concealing that their efforts were undertaken on behalf of the Venezuelan government.  *Id.* at 5–23.

To compensate defendants for their actions, Venezuelan government officials ordered executives of Citgo Petroleum, a wholly owned subsidiary of the Venezuelan state oil company, to arrange for a Citgo affiliate (PDV USA, Inc.) to enter an agreement with defendant Rivera's company (Interamerican Consulting, Inc.), pursuant to which Interamerican would purportedly render "strategic consulting" services "in connection with [Citgo's] business in the United States." The agreement's true purpose, however, was to compensate members of the conspiracy for their illegal lobbying efforts on behalf of the Venezuelan government.  The agreement provided for payment in total of $50 million to be paid over the course of three months, although Interamerican ultimately received a lesser sum in the amount of $20 million for defendants' efforts.  *Id.* at 6–11.

Defendants were well aware of FARA's requirements.  As the purported consulting agreement between PDV USA and Interamerican was being finalized, for example, defendant

4

Nuhfer emailed Rivera the contents of FARA filings (and associated hyperlinks on the DOJ FARA website), which Rivera used to draft the "Scope of Services" for the agreement.   Yet, in order to conceal from public scrutiny and U.S. officials the existence of the consulting agreement with PDV USA, and the millions of dollars they received to lobby covertly on behalf of the Venezuelan government, defendants willfully failed to register as FARA required.   *Id.* at. 11–12.

## Legal Standard

A defendant may file a pretrial motion to dismiss based on "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).   The Court may resolve such a motion "when the infirmity in the indictment is a matter of law and not one of the relevant facts is disputed."   *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004).[2]   Accordingly, in resolving the motion to dismiss, the Court "must deny the motion if the factual allegations of the indictment taken in the light most favorable to the government are sufficient to charge the offense as a matter of law."   *Id.*

## Argument

### A.    FARA's Registration and Disclosure Requirements Do Not Violate Defendants' First Amendment Rights.

Courts have held FARA's registration and disclosure provisions to comport with the First Amendment.   Defendants' arguments to the contrary reflect a misunderstanding of basic constitutional principles.   Most glaringly, they repeatedly assert that FARA registration operates as a "prior restraint," Mot. 5–11, but that term has a settled meaning under case law: a prohibition, such as an administrative or judicial order, that bars protected speech "*in advance* of the time that such communications are to occur."   *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis added) (noting that injunctions that "actually forbid speech activities" are classic prior

---

[2] Internal citations, quotations, and alterations are omitted unless otherwise indicated.

restraints).  FARA does no such thing, of course—the statute merely requires registration and limited disclosures by a person who engages in covered activities, without prohibiting such activity in advance.  *See* 22 U.S.C. § 612(a).  It is thus incongruous, to say the least, that defendants invoke the prior-restraint doctrine (which their own citations show is inapplicable) to seek the wholesale invalidation of FARA's longstanding system for foreign-agent transparency. Defendants' remaining First Amendment arguments are similarly refuted by their own cited cases, including precedent approving of disclosure requirements similar to FARA's.

### 1. Courts have consistently rejected constitutional challenges to FARA.

In the decades since its enactment, various parts of FARA, including the obligation to register as a foreign agent, have been upheld against First Amendment claims.   In *Meese v. Keene*, the Supreme Court rejected a challenge to the statute's use of the term "political propaganda" to identify materials subject to FARA's labeling and disclosure requirements.  *See* 481 U.S. 465 (1987).[3]  Keene wished to exhibit films about nuclear war and acid rain produced by a Canadian FARA registrant, which had been designated as propaganda under the statute.  *Id.* at 467–68. Keene feared injury to his reputation from exhibiting films with such an official designation, and obtained an injunction barring enforcement of FARA provisions incorporating the term "political propaganda."  *Id.* at 468–69.   The Supreme Court reversed, relying on FARA's neutral definition of that term and the fact that the statute did not burden protected expression.  *See id.* at 477–85. Rather than preventing Keene from exhibiting the films, the Court reasoned, FARA "simply required [the agent who disseminated] such material to make additional disclosures that would

---

[3] FARA's definition of "political activities" at 22 U.S.C. § 611(o) previously referred to "the dissemination of political propaganda," as defined by 22 U.S.C. § 611(j).  In 1995, Congress amended FARA to remove any reference to "political propaganda" in § 611(o) and to strike § 611(j).  Lobbying Disclosure Act of 1995, Pub. L. No. 104-65, § 9, 109 Stat. 691, 699 (1995).

better enable the public to evaluate [its] import."   *Id.* at 480.

In a related case involving the same films, the D.C. Circuit rejected a similar challenge to the designation of such material as propaganda.   *Block v. Meese*, 793 F.2d 1303, 1311–14 (D.C. Cir. 1986).   And, of particular relevance here, *Block* also rejected a separate First Amendment challenge to FARA's regulation requiring the public disclosure of organizations (such as theaters) displaying films designated as political propaganda, concluding that the government's interest in bringing "to public attention the scope and success of foreign agents' propagandizing activity" outweighed the plaintiffs' limited First Amendment interests in being able to receive and disseminate such material free from public disclosure.   *Id.* at 1315–17.

Although the requirement to register as a foreign agent was not squarely at issue in these cases, they are instructive in resolving defendants' First Amendment challenge.   Indeed, the central premise of their motion—that FARA registration violates the First Amendment as "a content-based, prior restraint of political speech" (Mot. 2)—is difficult to square with *Block*'s approval of the regulation requiring disclosure of theaters displaying propaganda films, *see* 793 F.2d at 1316–17, and with *Keene*'s observation that FARA's propaganda provisions did not burden protected expression in enhancing the public's ability to accurately assess information disseminated on behalf of foreign principals.   *See* 481 U.S. at 480–81.   Rather than preventing speech as defendants contend, FARA's registration requirement for political advocacy—when undertaken on behalf of a foreign principal—"better enable[s] the public to evaluate" such advocacy in its full context.   *Id.* at 480.

The FARA provisions at issue here, requiring an agent of a foreign principal to register as such, have also been upheld against First Amendment challenge.   In *United States v. Peace Information Center*, the court denied a motion to dismiss an indictment alleging violations of

FARA.   *See* 97 F. Supp. 255 (D.D.C. 1951).   Among other claims, the defendants argued that the requirement to register as a foreign agent "burden[ed] . . . the exercise of freedom of speech."   *Id.* at 262.   In denying the motion, the court noted that it was "clearly within [Congress's] powers relating to national defense to legislate concerning propaganda carried on in this country by foreign agents."   *Id.* at 261.   The Court further concluded that FARA registration comports with the First Amendment, reasoning that it "neither limits nor interferes with freedom of speech," nor does it "regulate [the] expression of ideas," and instead "merely requires persons carrying on [covered] activities to identify themselves by filing a registration statement."   *Id.* at 262; *see also United States v. Michel*, 2022 WL 4182342, at *5 (D.D.C. Sept. 13, 2022) (denying motion to dismiss FARA charges) ("Because, strictly speaking, FARA . . . do[es] not penalize *speech*, but rather the lack of registration, any facial challenge under the First Amendment fails.").

Various other challenges to FARA have failed over the years.   As one judge observed, the fact that no FARA provision has been held unconstitutional in the decades since its enactment indicates the statute's constitutionality is "well-settled."   *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 935 (D.C. Cir. 1982) (Wilkey, J.).[4]

### 2. *Defendants' First Amendment challenge is without merit.*

Defendants describe the cases upholding FARA as "overly technical" and "incorrect" under modern First Amendment doctrine, Mot. 8, which they claim FARA registration violates because it is both (1) a prior restraint, and (2) a content-based restriction of speech.   Mot. 2–8. These arguments, however, are based on cases invalidating governmental restrictions or outright

---

[4] *See also Att'y Gen. v. Irish N. Aid Comm.*, 346 F. Supp. 1384, 1391 (S.D.N.Y. 1972), *aff'd mem.*, 465 F.2d 1405 (2d Cir. 1972), *cert denied*, 409 U.S. 1080 (1972) (ordering organization to produce to FBI books and records relating to its FARA registration, as "any possible infringement of . . . First Amendment rights" was outweighed by strong governmental interest in disclosure).

bans on speech—ignoring that FARA registration does not prohibit speech at all, but instead calls for the additional *disclosure* of information when engaged in certain forms of advocacy.

First, the claim that FARA registration operates as a "prior restraint" (Mot. 6) merits little response.  The cases cited for that assertion—concerning judicial gag orders on speech by (or with) the news media, or laws requiring a party to obtain a permit from state officials before engaging in protected activity—are entirely inapt with respect to FARA registration.  FARA's registration requirement does not restrain political advocacy "in advance," *Alexander*, 509 U.S. at 550, but merely requires those who wish to pursue it for foreign principals to submit a registration statement within ten days.[5]   That is simply not a prior restraint.

Defendants' secondary argument—that FARA registration also fails First Amendment scrutiny as a content-based restriction on speech (Mot. 5, 8)—is equally unfounded.   That type of law is a "restriction [that] applies to particular speech because of the topic discussed or the idea or message expressed."   *Honeyfund.com v. Gov.*, 94 F.4th 1272, 1277 (11th Cir. 2024).   By contrast, FARA does not restrict speech based on such considerations; a speaker who engages in registrable conduct is free to express ideas or engage in advocacy as he or she wishes, so long as disclosure of the foreign-agent relationship is made as the statute provides.   Unsurprisingly, defendants identify no case finding a registration scheme comparable to FARA's to be a content-based restriction.   Rather, defendants only invoke general First Amendment principles in support of this argument, eliding that the cases stating such principles are plainly distinguishable.

---

[5] *See* Mot. 6; *CBS v. Davis*, 510 U.S. 1315 (1994) (Blackmun, J., in chambers) (gag order barring airing of news broadcast); *SEC v. Lauer*, 2004 WL 2931398 (S.D. Fla. Nov. 18, 2004) (request for gag order barring bankruptcy receiver from communicating with newspaper); *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) (fourteen-day advance notice period to apply for permit to speak within university campus); *Am. Target Adv., Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000) (prohibition on fund-raising solicitations without first obtaining state permit).

Defendants invoke *Reed v. Town of Gilbert* (Mot. 3, 5, 7–9), which involved a regulation that generally prohibited the unpermitted display of outdoor signs while affording varying exemptions for certain categories of signs based on their contents.  *See* 576 U.S. 155, 160 (2015). They also rely heavily on *Barr v. American Association of Political Consultants, Inc.* (Mot. 5), which addressed a congressional ban on robocalls with an exemption for robocalls made to collect government debts.  *See* 591 U.S. 610, 619–20 (2020) (plurality opinion) ("A robocall that says, 'Please pay your government debt' is legal.  A robocall that says, 'Please donate to our political campaign' is illegal.  That is about as content-based as it gets.").  Based on such authorities, defendants maintain that FARA registration is an unconstitutional content-based restriction because it "imposes reporting requirements on some—but not all—individuals who act as an agent of a foreign principal."  Mot. 5 ("[P]olitical lobbying triggers the registration requirement but engaging in [activities covered by FARA's exemptions] do[es] not.").

However, this argument—much like defendants' invocation of the prior-restraint doctrine—ignores that FARA registration does not actually restrict speech like the laws at issue in *Reed* or *Barr*, and the principles and doctrinal tests from such cases are therefore inapt.   As already discussed, rather than prohibiting or restraining the ability to engage in political advocacy, FARA merely requires registration and disclosure when such activities are done for a foreign principal. *See* 22 U.S.C. § 612(a).   At bottom, defendants' authorities plainly cannot be applied to invalidate FARA registration as an unconstitutional, content-based restriction of speech.[6]

---

[6] Defendants' other cases cited for this argument (Mot. at 2, 4, 7) are still more inapt.  *See, e.g.*, *Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308 (11th Cir. 2020) (municipal noise ordinance barring live musical performances except for approved outdoor venues); *Connor v. Palm Beach Cty.*, 1996 WL 438779 (S.D. Fla. May 29, 1996) (restrictions on political campaign activities in public park absent prior government approval); *Miller v. Ziegler*, 109 F.4th 1045 (two-year lobbying ban for former state legislators and staff).

### 3. *FARA registration withstands First Amendment review.*

The cases discussed previously that upheld various provisions of FARA are consistent with the view that FARA registration imposes no cognizable burden on protected speech; that heightened First Amendment scrutiny therefore does not apply; and, accordingly, it withstands review as a valid exercise of Congress's foreign-affairs and related powers. *See Peace Info. Ctr.*, 97 F. Supp. at 261–63; *see also Keene*, 481 U.S. at 473 (noting propaganda provision did "not have a direct effect on the exercise [of plaintiff's] First Amendment rights").

Even assuming greater scrutiny is required, defendants' argument for strict scrutiny—*i.e.*, that FARA registration must be "narrowly tailored" to furthering "a compelling government interest" (Mot. 9)—is without merit. For one, their authorities on this point involved the same content-based restrictions and prior restraints that are irrelevant for the reasons discussed above. More fundamentally, defendants fail to mention that *Citizens United*, a case they cite repeatedly (Mot. 3, 5–7), applied a lesser form of scrutiny in *upholding* a disclosure statute analogous to FARA registration—namely, the requirement that a party spending more than $10,000 annually on electioneering communications file a disclosure statement with the FEC identifying "the person making the expenditure, the amount of the expenditure, the election to which the communication was directed, and the names of certain contributors." 558 U.S. at 366.

While *Citizens United* applied strict scrutiny to invalidate a wholesale statutory *prohibition* on corporate election spending, *id.* at 365, it rejected plaintiff's challenge to the *disclosure* requirement (which defendants do not mention). Unlike the ban on corporate expenditures, the Court reasoned, the disclosure provision "impose[d] no ceiling on campaign-related activities" and "[did] not prevent anyone from speaking." *Id.* at 366. The Court thus assessed the law using "exacting scrutiny," a less stringent test that requires "a substantial relation between the disclosure

11

requirement and a sufficiently important governmental interest." *Id.*; *see also id.* at 367–71 (upholding disclosure provision, noting important interest in providing electorate with information about the sources of election-related spending).

Like the disclosure law in *Citizens United*, FARA registration does not prevent speech. Thus, even if a higher degree of scrutiny were required as to FARA registration, *but see Peace Info. Ctr.*, 97 F. Supp. at 262, it would at most be exacting, not strict, scrutiny. To be clear, however, the government's position is that FARA registration also satisfies strict scrutiny in any event, because it is narrowly tailored to a compelling government interest, as discussed below.

Courts have repeatedly recognized that FARA has the vital purpose of notifying the public about the nature and extent of the work agents perform on behalf of foreign principals. FARA registration—which does nothing to prevent an agent from speaking and only seeks basic information about the agency relationship—is precisely tailored to vindicate that interest.

As the Court noted in *Keene*, in order to "protect [U.S.] national defense, internal security, and foreign relations," FARA requires "public disclosure by persons engaging in propaganda activities and other activities for or on behalf of" foreign principals. 481 U.S. at 469. Such disclosure allows "the Government and the people of the United States [to] be informed of the identity of such persons and . . . appraise their statements and actions in the light of their associations and activities." *Id.* The Supreme Court has held that registration and disclosure laws analogous to FARA, ensuring public awareness of lobbying efforts to influence elected officials, may serve "a vital national interest" in this manner. *United States v. Harriss*, 347 U.S. 612, 625–26 (1954) (rejecting First Amendment challenge to Lobbying Act's registration and disclosure provisions); *see also Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 14–15 (D.C. Cir. 2009) (holding, in rejecting challenge to lobbying disclosure provision, that Congress had a "compelling

interest" in ensuring public disclosure of "who is being hired, who is putting up the money, and how much" they are spending to influence public officials). And, if the government's interest in such disclosure is compelling with respect to domestic lobbying efforts to shape public policy, it is all the more so when such efforts are undertaken at the direction of foreign principals. *See, e.g.*, *Irish N. Aid. Comm.*, 346 F. Supp. at 1390–91 (holding that there was "a strong governmental interest supporting the disclosure" FARA required where registrant's activities could influence U.S. policy or impair the conduct of foreign affairs).

FARA registration also is targeted to satisfy this critical interest. The information to be disclosed by form covers basic facts about the nature of the foreign agent's activities, such as the parties to the agency relationship, a description of the activities undertaken, and related financial arrangements. 22 U.S.C. § 612(a); *see also* 28 C.F.R. §§ 5.3–5.211 (implementing regulations). The information is limited to that necessary to educate the public in material respects about the agent-principal relationship and the nature and scope of the activities. And "it is obvious that the objective [of the statute] cannot be substantially achieved" if the government cannot make such elementary information about a foreign agent's activities available to the public. *Block*, 793 F.2d at 1316; *see also Harriss*, 347 U.S. at 625–26 (holding that regulation was "restricted to its appropriate end" where it "merely provided for a modicum of information from those who for hire attempt to influence legislation"). Indeed, defendants do not suggest that there is a less burdensome way to accomplish FARA's purpose, instead adopting the remarkable position that intervening developments since the statute's enactment demonstrate that "FARA registration serves no government interest, let alone a compelling one." Mot. 10. That position, of course, finds no support in any case law, and it is utterly refuted by the authorities discussed above.

In sum, precedent shows that FARA registration is narrowly tailored to serving a vital

interest in public disclosure.  To the extent the Court concludes that FARA's constitutionality should be reviewed under higher First Amendment scrutiny, it readily withstands such review.

### B.    Defendants' Facial Void-for-Vagueness Challenge is Without Merit.

#### 1.    *Precedent forecloses a facial vagueness challenge in this context.*

Defendants also assert a facial void-for-vagueness challenge to the exemption from FARA registration for (1) "private and nonpolitical activities in furtherance of the bona fide trade or commerce of [a] foreign principal" (22 U.S.C. § 613(d)(1), as further defined by regulation in 28 C.F.R. § 5.304(b)); and (2) for "other activities not serving predominantly a foreign interest" (22 U.S.C. § 613(d)(2)).  Mot. 11–14.  Defendants' facial challenge is foreclosed under binding precedent.  *See United States v. Di Pietro*, 615 F.3d 1369 (11th Cir. 2010).

*Di Pietro* affirmed the denial of a motion to dismiss an indictment that charged the appellant with abetting the entry into marriage for the purpose of evading the immigration laws, in violation of 8 U.S.C. § 1325(c).  Like defendants here, the appellant argued that the statute implicated the First Amendment, and "only challenge[d] the law [as vague] on its face, attacking the very validity of the statute itself."  *Id.* at 1371.  However, because she conceded that § 1325(c) was clear with respect to her own conduct, the court declined to consider her facial vagueness claim, based on the rule that "a [party] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Id.* at 1371–72 (discussing rule's rationale, including that it ensures "courts make informed judgments by limiting their decisions to actual, not hypothetical cases").

Defendants claim that the exemption from the requirement to register for conduct that does not "*predominantly* [serve] a foreign interest" (22 U.S.C. § 613(d)(2)) or "*directly* promote the *public or political interests* of [a] foreign government" (28 C.F.R. § 5.304(b)) is "impermissibly

14

vague" (Mot. 14), but they do not claim that any of this language is unclear as to their own alleged conduct.   Nor could they—a covert lobbying campaign instituted by Venezuela's government to sway U.S. foreign policy in its favor is plainly not covered under these provisions.   Because such conduct is "clearly proscribed" under FARA, defendants' facial vagueness challenge fails at the threshold.   *Di Pietro*, 615 F.3d at 1372.

Defendants acknowledge this rule while noting dicta that suggests it may not apply in the First Amendment context.   Mot. 13 (quoting *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) ("If a vagueness challenge to a statute *does not involve the First Amendment*, the analysis must be applied to the facts of the case.") (emphasis added); *Gray TV, Inc. v. FCC*, 130 F.4th 1201, 1217 (11th Cir. 2025) (similar)).[7]   Such dicta resulted from courts' consideration of vagueness challenges alongside claims of First Amendment overbreadth, a context (unlike vagueness) with a recognized exemption permitting defendants to raise the constitutional rights of others.   *See Di Pietro*, 615 F.3d at 1372.   Noting the Supreme Court's recent clarification of this issue in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), *Di Pietro* squarely held that the rule "makes no exception for vagueness challenges that implicate the First Amendment," and that "because Ms. Di Pietro does not dispute that § 1325(c) clearly covers her own conduct, she may not [facially] challenge the statute on vagueness grounds based on its application to others."   615 F.3d at 1372–73; *see also Holder*, 561 U.S. at 20 (noting this rule "makes no exception for conduct in the form of speech"); *United States v. Lewis*, 682 F. Supp. 3d 1038, 1041–44 (S.D. Ala. 2023) (applying *Di Pietro* and rejecting void-for-vagueness challenges as premature).

---

[7] *Duran* and *Gray* both addressed as-applied, not facial, vagueness challenges; their dicta do not undermine the holding of *Di Pietro*.   *See United States v. Henco Holding Corp.*, 985 F.3d 1290, 1304–05 (11th Cir. 2021) (declining to follow dicta that differed from controlling precedent).

Although they do not assert an as-applied challenge, defendants (somewhat ambiguously) indicate that they intend to argue "at trial" that "a fair reading of [the FARA] exemption . . . "encompass[es] the activities they took related to . . . Venezuela." Mot. 14. Based on this and other representations defense counsel has made, as well as the positions Rivera has taken in formal pleadings and deposition testimony in the pending SDNY civil case between Interamerican and PDV USA (with which this Court is familiar), it appears the defense at trial will be that any lobbying activities defendants engaged in to normalize U.S.-Venezuela relations were not connected to the $50 million agreement between PDV USA and Interamerican, or done at the direction of the Venezuelan government, but were rather undertaken for the benefit of the Venezuelan people or some similar reason. But on a motion to dismiss, where defendants' own conduct (as alleged) is clearly not exempt, the Court need not consider FARA's outer limits or whether its application could conceivably be unclear in some hypothetical case. Rather, the Court should reject defendants' challenge on this basis alone. *See Di Pietro*, 615 F.3d at 1371–73.

## 2. Defendants' vagueness challenge fails in any event.

Regardless, defendants' vagueness challenge is without merit. The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994). When evaluating statutory language, the Court should not "expect mathematical certainty," and a statute is not unconstitutional if "it is clear what the [law] as whole prohibits." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). As defendants note, their facial challenge fails unless they can "demonstrate that the law is impermissibly vague in all of its applications."

16

Mot. 13.[8]   Even in the First Amendment context, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."   *Holder*, 561 U.S. at 19.   And like all federal statutes, FARA should be interpreted in favor of constitutional construction, and may not be found vague "simply because difficulty is found in determining whether certain marginal offenses fall within [its] language."   *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (rejecting as-applied vagueness challenge to analogous foreign-agent prohibition).

The courts that have considered whether FARA is void for vagueness have readily concluded that it is not, relying on the statute's straightforward definition of its operative terms, as well as its "[o]bviously . . . definite" registration requirement.   *Peace Info. Ctr.*, 97 F. Supp. at 263–64; *Michel*, 2022 WL 4182342, at *5–6 (similar).   Defendants acknowledge as much and that no court has held otherwise (Mot. 17), and they do not directly assert any unclarity with respect to FARA's general registration obligation under 22 U.S.C. § 612(a), *per se*.   Instead, they attempt to create vagueness where courts have held there is none by importing claimed ambiguity in an *exemption* from the registration obligation, which is set forth in 22 U.S.C. § 613(d).

As relevant here, that exemption applies to those who "engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of [a] foreign principal; or (2) in other activities not serving *predominantly* a foreign interest."   The related regulation defendants challenge, which relates to § 613(d)(1), elaborates that "activities . . . in furtherance of the bona fide trade or commerce of [a] foreign principal[] shall be considered 'private,' even though the foreign principal is owned or controlled by a foreign government, so long as the

---

[8] The courts at times have described this requirement in less exacting terms than the "all of its applications" formulation above, including in the First Amendment context.   *See, e.g.*, *Harriss*, 347 U.S. at 618.   Regardless, defendants' facial vagueness challenge fails "if the general class of offenses to which the statute is directed is plainly within its terms," *id.*, as is the case here.

activities do not *directly* promote the *public or political* interests of the foreign government." 28 C.F.R. § 5.304(b); Mot. 14 (challenging italicized language above).[9]

Defendants' argument—that FARA registration as a whole is facially invalid based on the unclarity of these provisions—makes little sense. Even assuming any unclarity in the exemption from FARA's registration requirement, the unclarity of the exemption would hardly establish that the requirement to register "is impermissibly vague in all of its applications." *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982) (rejecting facial vagueness claim where at least "some objects" of the statute "clearly [fell] within the statutory definition"). As just one example, it is quite obvious that lobbying executive-branch officials to shape U.S. foreign policy as directed by an adversary government would be "serving predominantly a foreign interest." Indeed, defendants do not attempt to identify any conduct as to which the exemption would be unclear, and only complain as a general matter that certain of its terms are imprecise. Mot. 14.[10]

In any event, it is simply incorrect that terms such as "directly" and "predominantly" render a provision unconstitutionally vague. Those terms are hardly less precise than those used in other provisions upheld against vagueness claims. In *Harris*, the Court rejected such a challenge to the Lobbying Act's reporting requirement for a person "who . . . in any manner whatsoever, *directly or indirectly*, solicits, collects, or receives money or any other thing of value to be used

---

[9] Defendants' quarrel with 28 C.F.R. § 5.304(b) is particularly inapt. As noted, this regulation concerns activities "in furtherance of the bona fide trade or commerce" of a foreign principal that "is owned or controlled by a foreign government" (*e.g.*, a state-owned company), yet the foreign principal alleged here is not such an entity but the Government of Venezuela itself.

[10] *Cf. Ga. Outdoor Net., Inc. v. Marion Cty.*, 652 F. Supp. 2d 1355, 1362 (M.D. Ga. 2009) (rejecting vagueness challenge to exemption) ("Although [attorneys] in the comfort of their law libraries could conceivably dream up some activity that falls in the grey area of the exemption, such possibilities are not enough to make the Ordinance constitutionally infirm on its face.").

*principally* to aid, or the *principal* purpose of which person is to aid" the passage or defeat of legislation.   347 U.S. at 618–24 (emphasis added); *see also id.* at 624 n.15 (noting that the statute as construed "[was] at least as definite as many other criminal statutes which this Court has upheld against a charge of vagueness").   Similarly, the D.C. Circuit rejected a vagueness challenge to a regulation requiring the disclosure of any entity that "actively participates" in the work of a registered lobbyist.   *Taylor*, 582 F.3d at 23–25 ("[A]lthough the statute may not be a paragon of clarity, it is not so vague as to violate the Constitution, even applying the heightened standard applicable to regulation of speech."); *see also United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 (5th Cir. 1991) (rejecting vagueness challenge to DEA regulation requiring separate registration of "each *principal* place of business" used to distribute controlled substances). Tellingly, none of defendants' cases on this point even addressed a void-for-vagueness challenge.[11]

More fundamentally, defendants are wrong to suggest that potential difficult questions about FARA's outer bounds create a vagueness problem (Mot. 14–16).   As the Supreme Court has explained, "the mere fact that close cases can be envisioned" does not "render[] a statute vague" because "[c]lose cases can be imagined under virtually any statute."   *United States v. Williams*, 553 U.S. 285, 305–06 (2008). "The problem" of close cases "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."   *Id.*

Finally, defendants' void-for-vagueness claim is especially without merit in the present context of a criminal prosecution, where the government must prove that they violated FARA "willfully."   22 U.S.C. § 618(a)(1).   In rejecting vagueness claims, courts have consistently held

---

[11]   Mot. at 15 (citing *Edwards v. McElliots Trucking,* 268 F. Supp. 3d 867 (S.D. W. Va. 2017); *Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir. 2002); and *Crable v. Premier Baths, Inc.*, 2017 WL 10994536 (M.D. Fla. Feb. 1, 2017)).

that concerns of inadequate notice and arbitrary enforcement of a law are mitigated when the statute at issue contains a requirement of scienter.   *See, e.g.*, *Boyce Motor Lines v. United States*, 342 U.S. 337, 339–43 (1952) (rejecting vagueness challenge to criminal prohibition against transporting dangerous chemicals in congested areas "so far as practicable and where feasible" based on its "knowing" scienter requirement) ("This requirement of . . . culpable intent as a necessary element of the offense does much to destroy any force in the argument that [the prohibition] must be held invalid."); *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (scienter requirement in a statute "alleviate[s] vagueness concerns," "narrow[s] the scope of [its] prohibition[,] and limit[s] prosecutorial discretion").   At bottom, defendants' facial vagueness challenge is without merit.

> **C.     The Rule of Lenity does not apply.**

Defendants finally argue that the purported unclarity of the exemption means it must be held to apply to their alleged activities under the rule of lenity.   Mot. 17.   That rule, however, only applies "when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which [interpretive] aid can be derived, the Court can make no more than a guess as to what Congress intended."   *Ocasio v. United States*, 578 U.S. 282, 295 & n.8 (2016).   Defendants do not identify any statutory ambiguity that even arguably satisfies this standard, and the rule of lenity thus does not apply.   *See, e.g.*, *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023) (cited Mot. 17) (rejecting rule-of-lenity argument even where there was "a division in judicial authority" regarding statute's construction).

## <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss Counts 1 through 8 of the Superseding Indictment should be denied.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:      /s/ David J. Ryan

Harold E. Schimkat
Assistant United States Attorney
Court ID No. A5500567
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

&

David J. Ryan
Trial Attorney, National Security Division
Special Bar ID No. A5503306
District of Columbia Bar No. 888325195
950 Pennsylvania Ave., NW, Room 7700
Washington, DC 20530
Tel: (202) 353-7842
David.ryan2@usdoj.gov

21

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 28, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

 /s/
David J. Ryan