IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS COUNTS 1–8 OF THE SUPERSEDING INDICTMENT**

[SPACE INTENTIONALLY LEFT BLANK]

Defendants David Rivera and Esther Nuhfer filed—on First Amendment grounds—a Motion to Dismiss Counts 1–8 of the Superseding Indictment (the "MTD") [ECF No. 283] on July 24, 2025. The government filed a Response in Opposition (the "Response") [ECF No. 288] on August 28, 2025. Defendants therefore file this Reply. Concurrent briefing has also occurred with regards to Defendants' Motion to Dismiss—*in the alternative*—Counts 3–8 of the Superseding Indictment (the "Money Laundering MTD") [ECF No. 284].[1]

## ARGUMENT

As expected, the government's blatantly contradictory arguments in its Responses to the First Amendment and Money Laundering MTDs make clear that the government cannot possibly win both motions. Furthermore, the government's First Amendment Response flies in the face of the allegations it has advanced in the Superseding Indictment—specifically, allegations that Defendants were required to register under FARA *before* engaging in serial advocacy on behalf of the Maduro government pursuant to a contract. According to the government's own charging document, then, FARA is a prior restraint on the freedom of speech. And—as recently confirmed by the Attorney General—FARA has been rendered obsolete by societal, technological, and geopolitical changes such that it no longer serves any government interest, let alone one that satisfies strict or exacting scrutiny.

**I.  The government neglects to *even mention* the Bondi Memo anywhere in its 20-page Response.**

The government states in the first sentence of its Response that Defendants "ask this Court to do what no other has done over the course of the last 75 years. That is, they seek to have this

---

[1] The government filed its Response to the Money Laundering MTD (the "Money Laundering Response") [ECF No. 287] on August 28, 2025. Defendants are filing a separate reply in support of the Money Laundering MTD concurrently with the present First Amendment Reply.

2

Court declare unconstitutional core provisions of the Foreign Agents Registration Act ('FARA'), in their entirety, on First Amendment grounds." Response at 2. This is true. What the government has neglected to mention is that the current U.S. Attorney General—Pamela Bondi—has done something that no other U.S. Attorney General has done over the course of the last 75 years. **That is, Attorney General Bondi—in recognizing FARA's obsolescence—has explicitly instructed the Department of Justice ("DOJ") to no longer prosecute FARA cases like this one.** *See* Attorney General Bondi's Feb. 5, 2025, Memo at 4 ("Recourse to criminal charges under [FARA] . . . shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors."). That the government has willfully ignored[2] the Bondi Memo reveals that the government has no remedy for two crippling infirmities in its case: (i) FARA cannot survive any First Amendment analysis because the Bondi Memo is incontrovertible proof that FARA—a statute that has withered into obsolescence thanks to frequent legislative pruning and societal, technological, and geopolitical changes—no longer serves *any* government interest; and (ii) this prosecution violates an explicit order from the government's most senior law enforcement officer. Indeed, the government attorneys did not even attempt to explain away the Bondi Memo because it is not their place to question the Attorney General, and—even if it were—they have no response.

Other federal prosecutors, however, have not taken this approach. Since Defendants filed their MTD, the government in *United States v. Cuellar*, No. 24-cr-00224 in the Southern District of Texas, moved to dismiss FARA counts against former Congressman Enrique "Henry" Cuellar *precisely because of the Bondi Memo*. Counts 4 and 8 of that case alleged that Cuellar—vis-à-vis alleged conduct involving Azerbaijan—had violated 18 U.S.C. § 219, which states that

---

[2] Defendants say "willfully ignored" because Defendants discussed the Bondi Memo in detail in their First Amendment MTD. *See* MTD at 10.

3

"[w]hoever, being a public official, is or acts as an agent of a foreign principal required to register under the Foreign Agents Registration Act of 1938 or a lobbyist required to register under the Lobbying Disclosure Act of 1995 in connection with the representation of a foreign entity, as defined in section 3(6) of that Act shall be fined under this title or imprisoned for not more than two years, or both." 18 U.S.C. § 219(a). Said the district court in *Cuellar*:

> In February 2025, the Attorney General issued a policy memorandum "limit[ing]" the criminal "recourse" the government would pursue under [FARA] "to instances of alleged conduct similar to more traditional espionage by foreign government actors."
>
> The government determined that the indictment's § 219-related counts and allegations went beyond the Attorney General's policy guidance. The government asks the court to dismiss Counts 4 and 8 and strike [certain] allegations from the indictment.

*Cuellar*, No. 24-cr-00224, ECF No. 138 at 3 (S.D. Tex. Aug. 19, 2025) (citations omitted). In resolving an ancillary dispute between the government and Cuellar, the district court further noted:

> The government has stated its reasons for dismissing Counts 4 and 8, and they meet the requirement for court approval. The Attorney General's memorandum outlines the government's current enforcement priorities and explains that limiting criminal prosecutions under [FARA] will "free resources to address" other priorities. The Attorney General concluded that criminal prosecutions under the Act should be "limited to instances of alleged conduct similar to more traditional espionage by foreign government actors" and stated that the government may pursue other violations of the Act through "civil enforcement, regulatory initiatives, and public guidance." *The government moved to dismiss Counts 4 and 8 to align this prosecution with the Attorney General's current enforcement priorities.*

*Id.* at 7 (citations omitted and emphasis added). That court further observed that "[t]he record shows that the government moved to dismiss Counts 4 and 8 *after the Attorney General decided that prosecuting such offenses would criminalize an overly broad range of lobbying activities and absorb valuable prosecutorial resources*." *Id.* at 8 (emphasis added).

4

There are two takeaways from *Cuellar*: (i) when federal prosecutors engage with the Bondi Memo, as opposed to pretending it does not exist, they are left with no choice but to dismiss FARA prosecutions like this one that do not involve any alleged espionage. And (ii), the Bondi Memo confirms that FARA no longer serves any government interest—compelling, substantial, or otherwise—that justifies FARA's First Amendment infringements.

II. **FARA is a content-based, prior restraint of political speech that does not survive strict (or even exacting) scrutiny.**

Defendants argued in their MTD that FARA is a (i) content-based, (ii) prior restraint on (iii) political speech that—under the requisite strict scrutiny analysis—(iv) fails to serve a compelling government interest. *See generally* MTD at 2–11 The government's unpersuasive counterarguments to each of these four points will be considered in turn.

First, though, a threshold matter must be addressed. The government premises much of its Response on the faulty assertion that FARA does not implicate the First Amendment because it "does not prohibit speech at all" but "merely requires disclosure of basic information." Response at 2. This makes little sense. After all, the issue is not whether FARA *prohibits* speech but whether FARA *regulates* speech. *See e.g.*, *Citizens United v. Fed. Election Comm'n.*, 558 U.S. 310, 334 (2010) ("As additional rules are created for *regulating* political speech, any speech arguably within their reach is chilled." (emphasis added)); *Fed. Election Comm'n. v. Wis. Right to Life*, 551 U.S. 449, 469 (2007) (discussing the "*regulation*" of speech in the First Amendment context); *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 70 (2022) (same). Indeed, FARA can be invoked by the government to *imprison* individuals who engage in certain speech without acquiescing to a governmental regulatory scheme within ten days of engaging in said speech, and regulations that "subject[ ] the speaker to criminal penalties" are but one "example[ ] of restrictions that have been attempted at different stages of the speech process." *Citizens United*, 558 U.S. at

5

336–37; *see also McGlone v. Bell*, 681 F.3d 718, 733–34 (6th Cir. 2012) ("The simple knowledge that one must inform the government of his desire to speak and must fill out appropriate forms and comply with the applicable regulations discourages citizens from speaking freely."). Accordingly, a statute that requires an individual to make disclosures to the government in exchange for retroactive permission to speak clearly regulates speech.[3]

      i.      *FARA is a <u>content-based</u> speech regulation.*

Not only is FARA a speech regulation, but it is also a *content-based* speech regulation. The government disagrees, but its argument is unconvincing. According to the government, a content-based restriction on speech is a "restriction [that] applies to particular speech because of the topic discussed or the idea or the message expressed." Response at 9 (quoting *Honeyfund.com v. Gov.*, 94 F.4th 1272, 1277 (11th Cir. 2024)). True, and such a definition encompasses FARA. As Defendants previously observed, "[e]ngaging within the United States in political lobbying [on the behalf of a foreign principal] triggers the registration requirement but engaging 'in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal' or 'activities in furtherance of bona fide religious, scholastic, academic, or scientific pursuits or the fine arts'—for example—do not." MTD at 5 (quoting 22 U.S.C. § 613(d)–(e)). This may not

---

[3] The government, unsurprisingly, says exactly this in its Money Laundering Response. Consider this: "[T]he relevant statutory text [of FARA] clearly and unambiguously provides that a felony violation of FARA occurs only in circumstances where a defendant *both engages in certain statutorily defined conduct [i.e., speech] <u>and</u> fails to timely file a registration statement*[.]" Money Laundering Response at 10 (emphasis added). And this: "There is simply nothing in the statutory definition of criminally derived property in § 1957 to suggest that this Court should engage in an artificial parsing of FARA's underlying statutory language to focus on *one aspect* of the predicate factual requirements—the failure to file a registration statement with the Attorney General—*as being the sole act or element in establishing criminal liability* under FARA rather than looking at the operative text as a whole." *Id.* at 11 (emphasis added).

6

seem like a particularly pernicious content-based distinction, but it is a content-based distinction nonetheless.[4]

    ii.    *FARA is a <u>prior restraint</u>.*

The government argues that FARA is not a prior restraint since it "merely requires registration and limited disclosures by a person who engages in covered activities, without prohibiting such activity in advance." Response at 7. But even when accepting as true the government's misleading description, this regime *is* a prior restraint. There is no difference—for First Amendment purposes—between a statute that prohibits speech and a statute that forces an individual—*upon penalty of imprisonment*—to disclose information to the government in exchange for permission to speak. "A prior restraint," after all, "is simply a mechanism that can be used to deny a speaker permission to speak before the speech occurs." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1226 n.11 (11th Cir. 2017). FARA is such a "mechanism." *See Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (finding that a law that barred a professional solicitation consultant from assisting with a solicitation before complying with registration requirements "definitionally qualifies as a prior restraint"). In fact, the very allegations of the Superseding Indictment make clear that FARA is a prior restraint on the freedom of speech, as Defendants stand accused of having engaged in serial acts of advocacy on behalf of the Maduro government without having *first* registered under FARA. *See* Superseding Indictment [ECF No. 122] at 5.

---

[4] Again, the government makes Defendants' exact point in its Money Laundering Response: "By defining 'agent of a foreign principal' in terms of the types of conduct engaged in by the registrant—such as 'political activities' or the disbursement of funds in the United States—*FARA statutorily prescribes who must file a registration statement with the Attorney General <u>based on the nature of the activities engaged in by the foreign agent</u>*." Money Laundering Response at 4–5 (emphasis added) (citing *United States v. Wynn*, 636 F. Supp. 3d 96, 98 (D.D.C. 2022)).

To the extent that the government premises any of its argument on the fact that FARA has a ten-day grace period, such an argument is misplaced. *First*, this argument does not appear to jibe with the language of the statute, which states that "every person who *becomes* an agent of a foreign principal shall, within ten days thereafter, file . . . a registration statement," but that "no person shall *act* as an agent of a foreign principal *unless* he has filed . . . [a] registration statement." 22 U.S.C. § 612(a) (emphases added). *Second*—and assuming for sake of argument that FARA does provide a ten-day grace period between a lobbyist first engaging in regulated speech and asking for retroactive permission to have engaged in that speech—said grace period does not change the fact that FARA is a prior restraint. Grace period or no grace period, an individual who would like to engage in FARA-regulated speech knows that he *must disclose certain information to the government or face criminal liability*.

Furthermore—and as previously alluded to—the government's depiction of FARA as "*merely* requiring disclosure of *basic information*," Response at 2, is either highly misleading or indicative of a lack of understanding of what FARA actually demands. FARA's "true and complete registration statement," 22 U.S.C. § 612(a), and mandatory exhibits consist of *fourteen pages* of highly intrusive government interrogatories pertaining to the agent's and foreign principal's personal, corporate, and political identities; financial records; and intended activities. Not only that, but this rigorous paperwork must be updated every six months. *See* 22 U.S.C. § 612(b). Finally, that a lobbyist complies with these exacting requirements—which normally costs thousands of dollars—means nothing *until the Attorney General has weighed in*. *See* 22 U.S.C. § 612(d).[5] In short, FARA is far more akin to a *rigorous application* (that can be denied) than to a

---

[5] Here is the full text of that section:

> The fact that a registration statement or supplement thereto has been filed shall not necessarily be deemed a full compliance with this

*mere registration*, and the former mechanism is by definition a prior restraint. *See Barrett*, 872 F.3d at 1223 ("Permitting ordinances and licensing ordinances are classic examples of prior restraints." (citations omitted)).

      *iii.*      *FARA regulates <u>political speech</u>.*

As Defendants previously asserted, FARA restricts political speech. *See* MTD at 6–7. This almost goes without saying since FARA defines "agent of a foreign principal" as "any person . . . who directly . . . engages within the United States in *political activities* for or in the interests of such foreign principal." 22 U.S.C. § 611(c)(1)(i) (emphasis added). The government has effectively conceded this point by not contesting it. *See generally* Response (nowhere discussing whether FARA does or does not regulate *political* speech).

      *iv.*      *FARA is therefore subject to strict or—at the very least—exacting scrutiny, neither of which it satisfies.*

Because FARA is a (i) content-based, (ii) prior restraint on, (iii) political speech, it is subject to strict scrutiny for *each of these three independent reasons*. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015) (stating that content-based "[g]overnment regulation of speech" is "subject to strict scrutiny"); *Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1322

---

subchapter and the regulations thereunder on the part of the registrant; nor shall it indicate that the Attorney General has in any way passed upon the merits of such registration statement or supplement thereto; nor shall it preclude prosecution, as provided for in this subchapter, for willful failure to file a registration statement or supplement thereto when due or for a willful false statement of a material fact therein or the willful omission of a material fact required to be stated therein or the willful omission of a material fact or copy of a material document necessary to make the statements made in a registration statement and supplements thereto, and the copies of documents furnished therewith, not misleading.

22 U.S.C. § 612(d).

(11th Cir. 2020) ("Prior restraints are presumably unconstitutional and face strict scrutiny." (quoting *Burke v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1251 (11th Cir. 2004))); *Worley v. Cruz-Bustillo*, 717 F.3d 1238, 1242 (11th Cir. 2013) ("Laws that burden political speech are subject to strict scrutiny[.]'" (quoting *Citizens United*, 558 U.S. at 340)). But even if this Court somehow finds that these three *independent* bases for strict scrutiny do not apply, FARA is indubitably subject to the slightly less rigorous standard of "exacting scrutiny." *See Citizens United*, 558 U.S. at 366–67 (finding that because "[d]isclaimer and disclosure requirements may burden the ability to speak," the Supreme Court "has subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest" (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976))).

Ultimately, this discussion of what degree of scrutiny applies to FARA—strict or exacting—is a purely academic one. FARA survives neither strict nor exacting scrutiny as its disclosure requirements serve no purpose in today's technologically advanced and globalized society. Today, there is nonstop, instantaneous communications between scores of foreign principals on the one hand and individuals within the United States who meet FARA's expansive definition of "agent"[6] and advocate on behalf of those foreign principals on the other. Indeed, the wars in Gaza and Ukraine provide two timely examples—countless individuals are presently advocating within the United States on behalf of Palestinian, Israeli, Russian, or Ukrainian foreign

---

[6] Do not take Defendants' word for this—take the government's: "In general, the terms set forth at § 611 are defined broadly so that 'nearly anyone who represents the political or public-relations interests of a foreign principal in the United States is covered under FARA.'" Money Laundering Response at 5 (quoting *United States v. Michel*, No. 19-cr-00148, 2024 U.S. Dist. LEXIS 67018, at *46 (D.D.C. Apr. 12, 2024)).

principals, yet there are *only 529 total "active registrants" in the DOJ database*.[7] Not only does there appear to be no appetite in this country to force these advocates to make disclosures to the DOJ, but many of these advocates are hailed as courageous thought leaders by members of the same government that is prosecuting this case. Therefore, the only purpose FARA serves anymore is to be used as a cudgel to harass a few unlucky individuals who have—for whatever reason—drawn the ire of a *du jour* political establishment. Such a purpose—it goes without saying—cannot survive any First Amendment analysis.

This conclusion about government interests should come as little surprise since FARA was enacted over 75 years ago to combat "[t]he spread of fascism, communism, and economic unrest during the interwar period."[8] Specifically, Congress was concerned that "foreign sources would seek to influence the American people and government." Fattal at 909. But after the Allies achieved victory in World War II, "FARA was no longer needed to regulate subversive activity. As such, the Act gradually refocused from its original emphasis on subversive activity to an emphasis on protecting government decision making from foreign influence," *id.* at 911, via amendments in 1966 and 1995. That latter amendment was "part of a broader effort to reform lobbying disclosure laws." *Id.* In sum, what had once been a robust criminal statute that targeted a specific ill—namely, subversion of the United States government by highly organized and

---

[7] *See* UNITED STATES DEPARTMENT OF JUSTICE – FOREIGN AGENTS REGISTRATION ACT, https://efile.fara.gov/ords/fara/f?p=1381:17:11791470391296 (last accessed on September 11, 2025).

[8] Fattal, Joshua R., "FARA on Facebook: Modernizing the Foreign Agents Registration Act to Address Propagandists on Social Media," 21 N.Y.U. J. LEGIS. & PUB. POL'Y 903, 908–09 (2019); *see also* Straus, Jacob R., "Foreign Agents and Registration Act (FARA): Background and Issues for Congress," CONGRESSIONAL RESEARCH SERVICE, June 30, 2020 (https://www.congress.gov/crs-product/R46435) (noting that FARA was enacted to address "concern[s] about foreign propaganda and influence . . . in the United States," especially because of the "rise of Nazism in 1930s Germany").

motivated fascist and communist world powers—withered into a weak, largely ignored lobbying regulation.

The Bondi Memo, then, is the logical conclusion of the FARA death spiral. The Attorney General has finally eliminated—practically speaking—a statute that had already been rendered obsolete by technological and geopolitical changes, as well as by repeated Congressional whittling. The Attorney General's explicit instructions to DOJ confirmed what everyone who had any understanding of FARA already knew: FARA is dead. And if FARA is dead, it serves neither a "compelling" nor a "sufficiently important" government interest. That the government has chosen not to confront this argument means that it has forfeited any rebuttal. *See, e.g.*, *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1354 (S.D. Fla. 2024) (noting—albeit in the civil context—that "[w]hen a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned."); *Santiago v. Dudek*, No. 24-cv-22626, 2025 U.S. Dist. LEXIS 123316, at *18–19 ("Failure to respond to an argument concedes the point.").

Instead, the government has tried to breathe life into a deceased FARA by falling back on caselaw that predates the Bondi Memo and—in some instances—predates the major 1995 and even 1966 amendments. *See Meese v. Keene*, 481 U.S. 465 (1987); *Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986); *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982); *Att'y Gen. v. Irish N. Aid Comm.*, 346 F. Supp. 1384 (S.D.N.Y. 1972); *United States v. Peace Information Ctr.*, 97 F. Supp. 255 (D.D.C. 1951).[9] And even this caselaw seems to have been cast in doubt by *Citizens*

---

[9] The only case the government cites pertaining to the current version of FARA is an unpublished decision from outside the Eleventh Circuit: *United States v. Michel*, No. 19-cr-00148, 2022 U.S. Dist. LEXIS 165191 (D.D.C. Sept. 13, 2022). But, again, *Michel* was decided before the Bondi Memo.

*United*, in which the Supreme Court noted that "[w]e need not reach the question whether the Government has a compelling interest in preventing foreign nationals or associations from influencing our Nation's political process." *Citizens United*, 558 U.S. at 362. Accordingly, the government's caselaw is of little persuasive value when it comes to this critical point about government interests.

Finally, FARA is anything but "*narrowly tailored* to serve a compelling government interest" or "*substantially related* to a sufficiently important government interest." As previously described in the prior-restraint discussion, *see supra* at 7–9, FARA's registration requirements are extremely invasive and broad. Something far simpler—for example, requiring noting more than the disclosure the agent's name and the foreign principal's name and nationality—would achieve the supposed government interest that has been asserted (yet undercut by the Bondi Memo). As such, FARA is far broader and more demanding than strict or exacting scrutiny allow. *See Henry v. Sheriff of Tuscaloosa Cnty.*, 135 F.4th 1271, 1304 (11th Cir. 2025) ("Three factors guide our determination on whether state action is sufficiently tailored: overinclusiveness, underinclusiveness, and *the opportunity to enact less restrictive alternatives*. (citing *Dep't of State v. Munoz*, 602 U.S. 899, 919 (2024) (emphasis added))).

In short, the government has failed to undercut the gist of Defendants' MTD—FARA is a content-based, prior restraint of political speech that fails to survive strict or exacting scrutiny because the Attorney General has confirmed that FARA has been rendered obsolete by societal, technological, and geopolitical changes as well as Congressional whittling. Because FARA violates the First Amendment, the Superseding Indictment is defective and must be dismissed.

### III. Defendants' vagueness challenge to FARA is procedurally proper and substantively meritorious.

Defendants have also brought a "facial challenge on the basis that the language used in FARA's 'Private and Nonpolitical Activities' exemption—and its implementing regulation—are facially vague in violation of the Constitution." MTD at 13–14.[10] The government, however, attacks the procedural propriety of Defendants' vagueness argument by primarily relying on *United States v. DiPietro*, a decision in which the Eleventh Circuit affirmed the denial of a criminal defendant's facial vagueness argument because the defendant had "concede[d] that [the statute in question] clearly proscribe[d] the conduct in which she engaged and thus the statute [wa]s not unconstitutional as applied to her." 615 F.3d 1369, 1371 (11th Cir. 2010). But there is a critical difference between *DiPietro* and the present case—namely, Defendants here have *not* conceded that FARA clearly proscribes the conduct in which they allegedly engaged per the terms of the Superseding Indictment.

The government also makes much of the fact that Defendants have challenged the vagueness of *exemptions* to FARA. *See* Response at 17–19. But from a logical perspective, the exemptions to FARA—just as much as FARA itself—define what activity is and is not prohibited by that statute. Accordingly, if the exemptions to FARA are so vague such that "men of common intelligence must necessarily guess at [FARA's] meaning and differ as to [FARA's] application," FARA "violates the first essential of due process of law." *Fed. Commc'n Comm'n v. Fox Television Station*, 567 U.S. 239, 253 (2012) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

---

[10] To clear up any uncertainty, *see* Response at 17, Defendants have *not* brought an *as-applied* vagueness challenge. Defendants, however, reserve the right to bring an as-applied void-for-vagueness challenge sometime in the future once there are facts in evidence.

Finally, the caselaw that the government cites to negate the substance of Defendants' vagueness challenge to the specific phrases "*predominantly* a foreign interest" and "*directly* promote the *public or political interests* of the foreign government" is unavailing. *See* Response at 18–19. Two of the government's cases—*United States v. Clinical Leasing Service, Inc.*, 925 F.2d 120 (5th Cir. 1991), and *National Association of Manufacturers v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009)—are irrelevant since they involve vagueness challenges to terms or phrases not at issue here. And *United States v. Hariss*, 347 U.S. 612, 618–624 (1954)—which at least involved a word ("directly") at issue in the present case—is distinguishable. *Hariss*, after all, involved an unsuccessful vagueness challenge to the Lanham Act's reporting requirement for a person "who . . . in any manner whatsoever, *directly or indirectly*, solicits, collects, or receives money[.]" 347 U.S. 612, 618–624 (1954). But by using *both* "directly" *and* "indirectly" side by side in the Lanham Act, Congress engaged in redundant drafting; in other words, under that provision, *any* solicitation, collection, or receipt of money for enumerated purposes would trigger the Lanham Act's reporting requirement, and therefore neither the public nor the courts had a need to determine the meaning of either "directly" or "indirectly." Compare that to the present case, in which Defendants, the public, and the courts have no way of knowing what "activities" do or do not "*directly* promote the public or political interests of [a] foreign government." 28 C.F.R. § 5.304(b) (emphasis added).

Finally, the rule of lenity should apply to this void-for-vagueness argument. According to the government, the rule of lenity "only applies 'when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which [interpretive] aid can be derived, the Court can make no more than a guess as to what Congress intended.'" Response at 21 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016)). True—and that is exactly the case with FARA's "Private and Nonpolitical Activities" exemption. Under 23 C.F.R. § 5.304(b),

15

"activities of an agent of a foreign principal . . . in furtherance of the bona fide trade or commerce of such a foreign principal, shall be considered 'private,' even though the foreign principal is owned or controlled by a foreign government, so long as the activities do not *directly* promote the *public or political interests* of the foreign government." As Defendants have argued, *see* MTD at 14–15, this makes no sense. What other "interests" does a "foreign government" have beyond "public or political interests"? And how does any such "agent" know that his activities "directly"—as opposed to indirectly—"promote" those "interests"? No one—not Defendants, not the government, not this Court—"can make . . . more than a guess as to what Congress [or an administrative agency] intended" when it drafted 23 C.F.R. § 5.304(b), a regulation that is of paramount importance to this case.

## IV.   Conclusion

FARA is a severely flawed statute that has generated an entire cottage industry of legal scholars writing about its myriad constitutional infirmities. *See* MTD at 15–16. Indeed, FARA's glaring constitutional problems—in conjunction with FARA having been rendered obsolete by technological, societal, and geopolitical changes as well as legislative amendments—may explain why the Attorney General has instructed the DOJ to abandon cases like this one and why prosecutors in Texas did exactly that in *Cuellar*. In short, this Honorable Court must grant the pending First Amendment MTD because (i) FARA is a content-based, prior restraint of political speech that fails to survive strict or exacting scrutiny, and (ii) critical FARA exemptions are facially void for vagueness.

**Respectfully submitted on September 18, 2025:**

| | |
|---|---|
| **JONES WALKER LLP** | **MARKUS/MOSS PLLC** |
| 201 S. Biscayne Blvd., Suite 3000 | 40 NW Third Street, PH #1 |
| Miami, FL 33131 | Miami, FL 33128 |
| Tel: (305) 679-5700 | Tel: (305) 379-6667 |
| By:*/s/ Edward R. Shohat* | By:*/s/ David Oscar Markus* |
| **Edward R. Shohat** | **David Oscar Markus** |
| Florida Bar No. 52634 | Florida Bar No. 119318 |
| eshohat@joneswalker.com | dmarkus@markuslaw.com |
| **David S. Weinstein** | **Anita Margot Moss** |
| Florida Bar No. 749214 | Florida Bar No. 91870 |
| dweinstein@joneswalker.com | mmoss@markuslaw.com |
| **Thomas P. Bardenwerper** | *Counsel for Esther Nuhfer* |
| Florida Bar No. 1044458 | |
| tbardenwerper@joneswalker.com | |
| *Counsel for David Rivera* | |