UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-CR-20552-Damian/Torres

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

    Defendants.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' OMNIBUS MOTION *IN LIMINE***

    The United States, through undersigned counsel, respectfully submits this opposition to defendants' omnibus motion *in limine* to exclude evidence (ECF 338, "Mot.").

### Response to Defendants' Preliminary Statement

    Consistent with the Court's scheduling order (ECF 325), the government provided defendants its preliminary exhibit list on February 4th, containing close to all the exhibits potentially to be offered in the prosecution's case-in-chief. Thereafter, on February 11th, the government produced to defendants a revised exhibit list identifying a small number of additional exhibits. Contrary to defendants' claim in their preliminary statement, the total number of exhibits identified to date is substantially less than "850+" (Mot. 2), a figure that omits various ranges of numbers between 1 and 850, divided between the dozen or more sections in the government's list that correspond to different categories and/or witnesses regarding these exhibits. In truth, the total number of exhibits identified to date is closer to 500, including ~70 bank-record exhibits that may not even be introduced at trial because the underlying contents will be offered in summary form. *See* Fed. R. Evid. 1006.

    Moreover, on February 11th, the government produced its case-in-chief exhibits to

1

defendants, save for a handful of bank-record summary charts that it will produce in short order (whose substance, relating to wire transfers and funding flows underlying the pending money-laundering charges, is unlikely to be disputed at trial). Defendants' complaint that they do not have "the actual exhibits themselves" (Mot. 2) is no longer of any moment.

## Legal Standard

Relevant evidence is generally admissible unless the Rules of Evidence or other federal law provide otherwise. *See* Fed. R. Evid. 402. Evidence is relevant if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. In a criminal trial, "issues of consequence generally consist of the elements of the offenses charged and the relevant defenses (if any) raised to defeat criminal liability." *United States v. Williams*, 51 F.3d 1004, 1010 (11th Cir. 1995), *abrogated on other grounds by Jones v. United States*, 526 U.S. 227 (1999).

The Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice (or the other dangers identified in Rule 403, including confusing the issues, misleading the jury, and needlessly presenting cumulative evidence). Fed. R. Evid. 403. However, "exclusion for prejudice under Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Fey*, 89 F.4th 903, 913 (11th Cir. 2023); *see also United States v. Wilson*, 788 F.3d 1298, 1314 (11th Cir. 2015) ("[T]he test under Rule 403 is whether the other acts evidence was dragged in by the heels solely for prejudicial impact."). Moreover, the Court may appropriately reduce the risk of potential prejudice through limiting instructions to the jury. *See Fey*, 89 F.4th at 913. Ultimately, "the trial court is vested with broad discretion in ruling upon the relevancy and admissibility of evidence." *Williams*, 51 F.3d at 1010.

**I. References to political developments in Venezuela in 2017–18, including evidence concerning what defendants refer to as "humanitarian crises in Venezuela," are relevant to the pending charges and not unduly prejudicial.**

Defendants' first motion *in limine*, which seeks to exclude "references to humanitarian crises in Venezuela" and related topics at trial (Mot. 3), is a thinly-veiled attempt to inhibit the government's ability to present the jury with evidence about political developments in Venezuela, and that country's relationship with the United States, that is highly probative—indeed essential—to the pending charges. For instance, in April 2017, roughly two weeks after signature of the agreement between Rivera's company Interamerican and Venezuelan state oil company affiliate PDV USA, Rivera texted participants in the FARA scheme that he had "sent the invoice yesterday" (meaning an invoice to PDV USA seeking $5 million in FARA proceeds). The following day, another participant texted a link to a Miami Herald article titled "Southcom commander warns Congress of growing ***humanitarian crisis in Venezuela***," as depicted below:[1]



---

[1] The relevance and admissibility of this discussion, including that the contents of the Miami Herald article can be admitted for non-hearsay purposes, are described further in the government's motion in limine. *See* ECF 341 at 5–7.

3

In relevant part, the article stated that a senior U.S. military official had advised Congress that worsening developments in Venezuela "could trigger a *humanitarian crisis* requiring regional intervention." The person who sent the article was Raul Gorrin, who served as a conduit between defendants and senior Maduro officials. Gorrin elaborated that "[t]he Chancellor"—meaning Delcy Rodriguez, then Venezuela's Foreign Minister and a senior official in the Venezuelan state oil company—"called me, she's very worried . . . they're going to intervene in Venezuela," to which Nuhfer responded, "I don't know that, but I will tell you that we haven't stopped talking about what's going on in Venezuela."

Thereafter, in the same text thread, Gorrin texted defendants an image of another news article that referenced "repression in Venezuela," as depicted below:



Gorrin elaborated minutes later that "[t]hey are creating all the conditions for intervention," following which Rivera responded, "It is essential that we meet this Thursday to prevent the invasion of troops of [the President of the United States] in Venezuela. And now I have to send the third invoice!" ECF 122 p.17 ¶ 32.[2]

These exchanges—including the references to Venezuela's "humanitarian crisis" and the Maduro regime's "repression"—are probative and not unduly prejudicial with respect to the pending FARA and money laundering charges, including because they help illustrate that the payments made under the PDV USA agreement were for unregistered political activities regarding U.S.-Venezuela relations—as opposed to another purpose like providing business advice to Citgo (as Rivera has claimed). Accordingly, defendants' effort to categorically exclude any "references to humanitarian crises" (Mot. 3), which would apply to such discussions, is without merit.

Apart from the above example, the government may appropriately offer any number of other statements made by defendants and other persons in furtherance of the FARA scheme, including ones that refer to the "dire condition" (Mot. 3) of Venezuela's society and political order at the time. These statements will not be offered for the purpose of inflaming the jury's prejudice against defendants. Rather, such discussions of Venezuela matters will be offered to show that defendants' unregistered political activities concerning U.S.-Venezuela relations in 2017–18 were directly linked to the PDV USA agreement and the millions of dollars paid thereunder—something defendants (or their counsel) have repeatedly denied in various fora. Moreover, it would be strange to exclude such references, involving the defendants themselves, in a case where they are charged with unregistered political activities for the Maduro government in furtherance of

---

[2] Relatedly, on April 19, 2017, Gorrin stated to the participants in the MIA Chat Group (including Rivera and Nuhfer): "This crisis is benefitting us"; "That is where we will take advantage"; "CRISIS = OPPORTUNITY"; and "$$$$$$$$$$$$$$$" (Spanish translation).

normalizing its U.S. relationship—normalization that was only necessary because of the deterioration of Venezuelan politics, the Maduro regime's reprisals against the opposition and the protesting public, and the resulting impact on U.S.-Venezuela relations.[3]

Broadly speaking, the government will need to show the jury that the participants in the FARA scheme communicated contemporaneously about (1) defendants' unregistered political activities concerning U.S. officials and others; (2) payment under the PDV USA agreement; (3) officials within Venezuela's government and its state oil company ("PdVSA"); and (4) ongoing developments in Venezuelan politics and U.S.-Venezuela relations, in order to demonstrate that these issues were all related to each other and to the pending charges, and ultimately, that the charged offense conduct was done on behalf of the Venezuelan government.

The relevance of such evidence is clear, and the fact that the communications in this regard sometimes referenced the Venezuelan people's suffering does not make them unduly prejudicial. For example, in October 2017, Gorrin texted defendants a hyperlink to a news article titled (Spanish translation) "*How Chavismo wins elections and deflects the effects of the severe economic crisis affecting Venezuela*"; the following day, Nuhfer and Rivera discussed with Gorrin, in the same text thread, sending an Interamerican invoice to a senior PdVSA official for the purpose of obtaining FARA proceeds. There were various similar interactions between the participants in the FARA scheme beginning from its inception, evidence of which is likewise probative and not unduly prejudicial. In short, defendants' efforts to exclude all references to the "dire humanitarian conditions in Venezuela" (Mot. 3) at the time of their offense conduct should be rejected.

---

[3] Should the Court find it helpful, a brief summary of the relevant political developments in Venezuela as of 2017–18 can be found in "Venezuela: Background and U.S. Relations," Congressional Research Service, No. R44841 (November 7, 2019), at pp. 5–7 *available at*: https://www.congress.gov/crs_external_products/R/PDF/R44841/R44841.22.pdf

To be clear, the government will not be referencing "dire conditions in Venezuela" in the abstract. Rather, as defense counsel are surely aware, the references to such conditions in Venezuela—including its "starving" people and Maduro's "human rights abuses," Mot. 3—were made by the defendants themselves (or by their confederates), in statements the government will offer as being in furtherance of the charged conspiracy. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (noting that evidence "pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury").

In short, defendants' first motion *in limine* is without merit and should be denied.

## II. The Court should reject defendants' efforts to exclude "any reference" to the SDNY civil case between Rivera's company Interamerican and PDV USA.

Defendants seek to exclude, on grounds of irrelevance and undue prejudice, "any references before the jury to the PDV USA Civil Suit generally and to the underlying allegations specifically" relating to the claims and counterclaims asserted by the parties there. Mot. 4. Defendants' request is wholly without merit. Importantly, the government does not seek to offer evidence regarding "the underlying allegations" in the lawsuit or the SDNY parties' specific claims. Rather, the government only intends to refer in general terms to the fact that there was pending civil litigation concerning the PDV USA agreement, in connection with which Rivera provided sworn deposition testimony, as part of the foundation for introducing that testimony.

The true purpose of defendants' motion, which would preclude "any" reference to the SDNY case, even in such "general[]" terms as the government proposes (Mot. 5), may well be to limit the introduction of Rivera's deposition testimony as evidence at trial. However, as explained in the government's motion *in limine* (ECF 341 at 8–11), case law makes clear that Rivera's

7

deposition is admissible against him because it is a quintessential relevant statement of a party opponent, and it is not unduly prejudicial. *See United States v. Veltmann*, 6 F.3d 1483, 1500 (11th Cir. 1993). In *Veltmann*, the Eleventh Circuit ruled that "statements made in a civil deposition arising out of the same facts as a criminal prosecution are admissible as admissions when offered against the declarant." *Id*. *Veltmann* further held that the deposition testimony admitted against the defendant there was not unduly prejudicial, where the testimony concerned his "explanation of circumstances surrounding the charged crime." *Id.* ("[The] deposition answers are undoubtedly prejudicial, but not so *unfairly* prejudicial as to warrant exclusion."). The same is true with respect to Rivera's deposition testimony here, and the Court should accordingly admit it. *Accord United States v. Frost*, 234 F.3d 1023, 1024–25 (8th Cir. 2000) (reversing the trial court's grant of criminal defendant's motion *in limine* under Rule 403 to exclude his deposition testimony from a civil case involving the same forgery as the criminal charges) ("The deposition testimony is evidence of fraudulent intent and consciousness of guilt, and its probative value clearly outweighs its possible prejudicial effect.").

If a criminal defendant's prior civil deposition testimony concerning the same events as the pending charges is relevant and not unduly prejudicial, as the above authority confirms, then *a fortiori* the government can also offer, as foundation for the deposition testimony, evidence regarding the existence of the civil suit.[4] The government intends to do so here, without delving into the "specific allegations" and claims in the SDNY case. Accordingly, defendants' request to preclude "any references" to that case should be denied.

---

[4] Between this brief, the government's motion *in limine*, and the government's opposition to Nuhfer's pending motion for severance, there are ample criminal cases in which related civil deposition testimony was offered as evidence against the defendant-declarant, none of which ruled that a criminal jury cannot learn the existence of the civil case in which the deposition was taken.

Defendants' citations on this issue are unpersuasive. In *Hardesty v. Kroger Co.*, the court granted plaintiffs' motion in a collective action under the Fair Labor Standards Act to exclude evidence of one plaintiff's separate wrongful-termination case against defendant-employer Kroger, which Kroger sought to offer to show that plaintiff's bias and motive to sue. *See* 2022 WL 742847, at *3 (S.D. Ohio Mar. 11, 2022) (cited Mot. 5, 2022 U.S. Dist. LEXIS 43300). There was no reference in *Hardesty* to that individual plaintiff giving deposition testimony relevant to the claims in the FLSA action, which concerned Kroger's failure to pay overtime compensation to the 27 plaintiffs—not the wrongful termination of the individual plaintiff in the separate suit. *Id.* That evidence of the separate lawsuit in *Hardesty* was excluded as unduly prejudicial has no bearing on the admissibility of the existence of the SDNY litigation, in which Rivera gave relevant deposition testimony concerning the PDV USA agreement that underlies in part the pending FARA and money laundering counts. *Compare id.* at 3 ("This case's claims have to do with a right to overtime compensation, not wrongful termination, and involve not one but 27 individuals. . . . Admission of [the other lawsuit] may confuse the issues and cast Hardesty in an unfairly prejudicial light as a disgruntled employee stirring up litigation out of spite.").

*Avomeen Holdings v. Thanedar*, a corporate-acquisition dispute where the plaintiff-acquirer sued the defendant-seller for inflating the value of the acquired company through misleading representations, is even farther afield. *See* 2019 WL 7584525, at *10 (E.D. Mich. July 25, 2019) (cited Mot. 6, 2019 U.S. Dist. LEXIS 225297). There, the federal district court excluded evidence of the defendant's recently filed state-court action against the plaintiff, including because it would have required extensive consideration by the federal jury of the claims and allegations in the state-court action. *See id.* at *3 ("Essentially, Defendants contend that the jury should consider unsupported allegations in the separate [state] lawsuit to determine whether

it is appropriate to reduce the potential damages amount here.  [This would] require the jury to gain an understanding of the issues in that suit, . . . [and] would also require the parties to present the evidence from that case, thereby creating another trial within itself.").  Here, conversely, the government will not be presenting the allegations and claims from the SDNY lawsuit; rather, it will merely offer the fact that there was separate civil litigation regarding the PDV USA agreement, in which Rivera testified at deposition.  As explained above, the government is permitted to provide such limited context in introducing what case law recognizes to be quintessential statements of a party opponent, which are probative with respect to the *mens rea* for the pending charges and not unduly prejudicial.

Accordingly, the Court should deny defendants' second motion *in limine*.

**III.     The government does not intend to offer the out-of-court statements and law-enforcement reports referenced in defendants' third motion *in limine*, and the objections stated in the motion are either premature or without merit.**

Defendants' final motion *in limine* concerns (1) out-of-court statements made by Arnaldo Arcay, an employee of PdVSA subsidiary Citgo Petroleum, during his deposition for the SDNY case; and (2) the contents of interview reports that two law-enforcement agents prepared in connection with interviews of Gina Coon (another Citgo employee) and Hugo Perera.  Regarding the latter category, the two law enforcement agents who prepared the interview reports were not identified on the government's preliminary witness list disclosed to the defense on February 4th, and the government does not intend to call them at trial.

***Arnaldo Arcay.***  The government agrees with defendants (Mot. 7) that Arnaldo Arcay's out-of-court statements during his deposition for the SDNY case are not admissible at trial, and it does not intend to offer them as evidence.  However, to the extent defendants' *in limine* motion is intended to exclude the *substance* of that deposition testimony—whether related by Arcay, or any other witness during trial—that request for relief should be denied (at a minimum as premature).

10

As background, an important part of the factual context for the pending charges is that employees of Citgo, upon learning of the PDV USA agreement (and its provision for $50 million in compensation over a three-month term), investigated the circumstances of the agreement, including by researching Rivera and his company Interamerican Consulting. The fact that such investigation took place, and that Citgo personnel then sought to halt further payments under the agreement and to assign it to another PdVSA entity outside the United States, is relevant. In particular, those developments make it more likely that the PDV USA agreement was not a standard consulting contract for the provision of business advice to Citgo (as Rivera has claimed), but rather an artifice to effect massive payments to the defendants from the Venezuelan state oil company as compensation for their unregistered political activities (as the government claims). These developments, moreover, are part of the chain of events explaining "the context, motive, and set-up" of the pending charges, and are "necessary to complete the story of the crime for the jury." *Edouard*, 485 F.3d at 1344.

The government does not intend to elicit from any witness who may testify about these developments a statement to the effect that Rivera is a "corrupt" or "crooked" politician (Mot. 7). Should the government's witness examination, in defendants' view, appear likely to elicit such statements, defendants may object at that time on grounds of irrelevance, undue prejudice, or otherwise. But the categorical exclusion, prior to trial, of testimony concerning these developments is unwarranted for the reasons discussed above.

**Gina Coon and Hugo Perera.** As the government explained in its motion *in limine*, subject to exceptions not implicated here, law enforcement interview reports are not statements of the witnesses who were interviewed and are not to be offered at trial, including for purposes of impeachment. ECF 341 at 20–22. Accordingly, the Court need not consider defendants' motion

*in limine* to the extent it seeks to exclude out-of-court statements within Gina Coon's and Hugo Perera's interview reports (Mot. 7–9) that the government does not intend to offer as evidence.

Contrary to defendants' suggestion (Mot. 8–9), the government does not intend to offer evidence regarding allegations of election fraud concerning Rivera, or to elicit ad hominem attacks against him, or any other evidence with respect to Coon or Perera that is without probative value or otherwise is improper under the Federal Rules. In the event the government calls these individuals as witnesses at trial, defendants may object at that time to any testimony they view as improper (including on grounds concerning the witness' lack of personal knowledge, irrelevance, undue prejudice, and hearsay, Mot. 7–9). In its present form, however, defendants' motion *in limine* concerning these individuals and their law-enforcement interview reports does not present this Court with a substantive evidentiary claim on which it can rule in advance of trial.

## Conclusion

For the foregoing reasons, defendants' omnibus motion *in limine* should be denied.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   /s/ David J. Ryan

Harold E. Schimkat, AUSA
Roger Cruz, AUSA
Court ID No. A5500567
Fla. Bar No. 157971
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

&

David J. Ryan

12

Trial Attorney, National Security Division
Special Bar ID No. A5503306
District of Columbia Bar No. 888325195
950 Pennsylvania Ave., NW, Room 7700
Washington, DC 20530
Tel: (202) 353-7842
David.ryan2@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/
David J. Ryan