**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**No. 22-cr-20552-DAMIAN/TORRES**

UNITED STATES OF AMERICA,

v.

DAVID RIVERA and ESTHER NUHFER,

Defendants.

_____/

**NUHFER'S MOTION TO RECONSIDER**
**EXCLUSION OF GOVERNMENT EXHIBIT 26**

"Appeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial."

— *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000).

**<u>INTRODUCTION</u>**

Undersigned counsel does not file this motion lightly.  But we believe so very strongly that allowing the texts (not by Esther Nuhfer) calling Venezuelans "little brown indians" into this trial after the jury just heard texts (not by Esther Nuhfer) calling them "savages" would not allow Esther Nuhfer to receive a fair trial.  We respectfully request that the Court consider whether these two lines in GX26 are really necessary at this point or whether they are cumulative and unduly prejudicial.  Redacting these two lines of texts (during a three-day direct examination) would not prejudice the government in any way.

The Rule 403 calculus governing Government's Exhibit 26 has changed fundamentally since this Court denied the defense motion to exclude. Two material developments merit reconsideration. First, the government introduced (over defense objection) separate text messages in which Rivera calls U.S. Venezuelans "savages" and uses other derogatory language targeting

that same community. With those texts now in evidence, GX 26 is cumulative. Its marginal probative value is zero. Second, this trial is being decided by a jury that includes at least four Venezuelan-Americans, during an extraordinary moment of political upheaval in the Venezuelan-American community. Venezuela's president has been forcibly rendered to the United States, inflaming communal passions that no limiting instruction can reach. Ethnic slurs targeting the very people sitting in the jury box, introduced after equivalent slurs have already been admitted, represent precisely the kind of evidence Rule 403 was designed to stop.

Esther Nuhfer did not utter a single word of the language at issue in GX 26. She made no reply to the slurs. The only effect of GX 26 on her case is unfair prejudice.

## ARGUMENT

### I. The Court Retains Full Authority to Reconsider This Ruling.

The Supreme Court is unequivocal: in limine rulings are provisional. "The ruling is subject to change when the case unfolds. . . . [T]he district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41–42 (1984). As the Supreme Court has recognized, the effect of an in limine evidentiary ruling is often "wholly speculative" until the evidence is actually presented at trial, because "both the Government and the defendant … must make choices as the trial progresses." *Ohler v. United States*, 529 U.S. 753, 759 (2000).

That qualifier is dispositive here as Rule 403 balancing is the paradigmatic category of ruling that should be revisited because the balance is inherently contextual and dynamic.

The Federal Rules themselves authorize this motion. The Advisory Committee Notes to the 2000 Amendment to FRE 103 state that "[i]f the relevant facts and circumstances change materially after the advance ruling has been made, those facts and circumstances . . . [must] be

brought to the attention of the trial court by way of a renewed, and timely, objection, offer of proof, or motion." That is what this motion does. The circumstances have changed materially because the government's own evidentiary choices have rendered GX 26 cumulative and unduly prejudicial in light of the composition of the seated jury.

## II. GX 26 Is Now Cumulative, and Its Marginal Probative Value Is Zero.

The government's stated justification for GX 26 is that Rivera's language shows he had no regard for Venezuelans or the Venezuelan opposition. That same point — to the extent it is a relevant point at all — has now been made by the Rivera-Perera texts, in which Rivera calls U.S. Venezuelans "savages" and uses additional derogatory language about that community. The government has gotten what it came for. GX 26 is cumulative of those texts.

The Supreme Court's Rule 403 framework is clear. In *Old Chief v. United States*, 519 U.S. 172, 185 (1997), the Court noted that probative value may be understood as the "marginal probative value" of evidence relative to other proof in the case. The Court further held that "[i]f an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it." *Id.* at 182–83. With the "savages" texts already before the jury, GX 26's marginal probative value on the government's theory is nil. Any jury that has heard Rivera call Venezuelans savages has fully absorbed whatever point the government seeks to make about his attitude toward that community.

The Fifth Circuit put it plainly in *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979), stating that Rule 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." That formulation describes GX 26 exactly as the trial now stands. Exhibit 26 is being "dragged in by the heels" for

the added inflammatory effect of Rivera calling Venezuelans "little brown Indians" — after the government has already introduced the "savages" texts. Rule 403 was written precisely to stop this.

This Court should not grant the government license to stack ethnic slur upon ethnic slur on the theory that each adds incremental color. At some point — and that point has been passed — the accumulation of inflammatory evidence stops proving anything and simply poisons the jury. Rule 403's "needlessly cumulative evidence" prong exists for precisely this moment.

### III. Ethnic Slurs Carry Presumptive Unfair Prejudice and Ms. Nuhfer did not adopt them.

The Supreme Court has made clear that racial and ethnic bias is not merely one form of prejudice among many — it is a uniquely corrosive force in jury proceedings. In *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 224 (2017), the Court held that racial bias is "a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice." The Court discussed *United States v. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001), which addressed whether "one racist juror would be enough" to corrupt a verdict. If racial bias *after* a verdict is so grave as to require extraordinary relief, racial bias introduced – during trial, through the government's own evidence — demands preventive exclusion before the damage is done.

In *Buck v. Davis*, 580 U.S. 100, 122 (2017), the Supreme Court held that evidence appealing to ethnic or racial stereotypes creates prejudice sufficient to vitiate a conviction, observing: "Some toxins can be deadly in small doses." The Court declared, "Our law punishes people for what they do, not who they are. Dispensing punishment on the basis of an immutable characteristic flatly contravenes this guiding principle." *Id.* at 123. What is true of defendants is equally true of the people they are accused of interacting with; that is, a jury cannot be trusted to

assess the facts of this case impartially once it has heard one defendant repeatedly denigrate the ethnic group from which multiple jurors come.

Federal circuits have treated prosecutorial appeals to ethnic bias as among the most serious errors in trial law. In *United States v. Cabrera*, 222 F.3d 590, 597 (9th Cir. 2000), the court reversed convictions where the government repeatedly invoked the defendants' Cuban ethnicity, holding that "[p]eople cannot be tried on the basis of their ethnic backgrounds or national origin." The court applied Rule 403 to find that even marginally relevant ethnic references rendered probative value substantially outweighed by unfair prejudice. In *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992), the Second Circuit declared that injection of ethnicity "is self-evidently improper and prejudicial for reasons that need no elaboration." That per se condemnation applies with full force here, where the slurs are not indirect ethnic references but explicit racial epithets.

This district knows this principle. In *United States v. Esformes*, Case No. 1:16-cr-20549-RNS (S.D. Fla.), when a prosecutor described the Jewish defendant as someone who "preyed on people like a vampire" — invoking a religious trope far more attenuated than the explicit slurs in GX 26 — the district court immediately sustained the defense objection and told the jury the remark was "totally improper." The metaphor in *Esformes* required interpretive inference to land as a religious slur. The language in GX 26 requires nothing of the sort. "Little brown Indians" is not a metaphor. It is a racial epithet aimed directly at the ethnic community from which multiple members of this jury are drawn.

The Second Circuit in *United States ex rel. Haynes v. McKendrick*, 481 F.2d 152, 161 (2d Cir. 1973), issued a warning that bears repeating here -- racially prejudicial evidence is "so likely to prevent the jury from deciding a case in an impartial manner and so difficult, if not impossible, to correct once introduced" that courts must prevent its admission. A limiting instruction cannot

cure this. Asking four Venezuelan-American jurors to evaluate this case on its merits when the government is showing the jurors texts that call them savages and little brown Indians makes a fair trial impossible.

The prejudice is even more severe here where Ms. Nuhfer did not make the statements or adoptively admit them. Her silence does not constitute an adoptive admission. *See, e.g., People v. McDaniel*, 38 Cal. App. 5th 986 (Cal. App. Ct. 2019) (reversing conviction for admitting texts where defendant was accused of crime and did not respond under the theory that the defendant's silence was an admission). Here, after receiving the texts, Ms**. *Nuhfer changed the subject*** and asked who Pio was. She did not adopt the texts in any way.

The government's "adoption by silence" theory also fails on its own terms. The Advisory Committee Notes to Rule 801(d)(2)(B) are explicit: the adoption-by-silence inference depends on circumstances where a person "would, under the circumstances, protest the statement made in his presence, if untrue." The Notes then flag the particular weakness of this theory in criminal cases, observing that "the inference is a fairly weak one, to begin with" and that silence in this context raises "troublesome questions." Fed. R. Evid. 801(d)(2)(B) advisory committee's note.

None of the predicate conditions for adoption are satisfied here. The slur was not directed at Nuhfer. It did not accuse her of anything. It called for no response. There is no basis in "probable human behavior" — the Notes' own standard — to conclude that a recipient of an unsolicited racist remark in a text exchange is expected to stop and formally object to the sender's characterization, or that failure to do so signals agreement with it.

More importantly, Nuhfer did not remain silent. She changed the subject entirely: "Who is this Pio guy?" That is not acquiescence. That is the entirely natural response of someone who does not agree to her co-defendant's language.

**V. The Jury's Composition and the Current Political Climate Render GX 26's Admission Constitutionally Untenable.**

The Rule 403 balance is not assessed in a vacuum. It is assessed against the "full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief*, 519 U.S. at 182. That context now includes a jury that includes at least four Venezuelan-Americans at a moment of extraordinary political upheaval when Venezuela's president has been forcibly rendered to the United States, inflaming passions in the Venezuelan-American community in ways that are neither subtle nor temporary. These are jurors with personal connections to the community that the texts repeatedly and explicitly denigrated.

The Supreme Court in *Rosales-Lopez v. United States*, 451 U.S. 182, 182 (1981), held that courts must take special protective measures when "racial issues are inextricably bound up with the conduct of the trial and there are substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors." That standard is met here. The slurs target the national-origin group of multiple seated jurors. The political events surrounding this trial have heightened the emotional stakes of that targeting in ways no instruction can address. Allowing the government to present texts calling Venezuelans "little brown Indians" to Venezuelan-American jurors — after already presenting his description of them as "savages" — does not just risk unfair prejudice. It guarantees it.

**V. The Government's Stated Justification Does Not Survive Scrutiny.**

In opposing the original motion, the government offered two theories: (1) that Rivera's language shows the defendants were in contact with Venezuelan officials in furtherance of the PDV USA agreement, and (2) that it rebuts the defense suggestion that their conduct was humanitarian in motivation. Neither theory survives the changed evidentiary landscape.

As to the first theory, the use of ethnic slurs does not prove contact with Venezuelan officials. The government's own exhibit says "I have a plan for all the little brown ones" — a boast about a plan, not evidence that any plan was executed through official Venezuelan channels. The actual evidence of contact — invoices, wire transfers, the contract itself — is in the record and proves this without any slur.

As to the second theory, whether Rivera harbored contempt for the Venezuelan people is now established by the "savages" texts. GX 26 adds nothing to that proof. The government cannot justify piling on with additional derogatory language simply because it has more of it. Cumulative inflammatory evidence does not become probative by repetition.

More fundamentally, the government is attempting to use the racist language against Nuhfer. Its theory at the original hearing was that Nuhfer "adopted" Rivera's slurs by failing to correct them. This theory has no legal or evidentiary basis. Nuhfer's silence in response to the texts does not constitute adoption of racial animus.

## **CONCLUSION**

The "savages" texts have mooted whatever marginal probative value GX 26 once carried. Plus Perera has been on the stand now for almost 2 full days, just on direct.  It's enough.  On top of that, the composition of this jury, combined with the extraordinary political moment in which it sits, has elevated GX 26's prejudicial impact. This is precisely the convergence of circumstances that Rule 403 was designed to address, and that the Fifth Amendment demands be addressed.

Allowing GX 26 in evidence stacks ethnic slur upon ethnic slur before Venezuelan-American jurors whose community is in political upheaval, for the purpose of condemning both defendants — ***including one who never said a word of it***. A fair trial for Esther Nuhfer is not possible under those conditions.

The defense respectfully requests that the Court reconsider its prior ruling and exclude Government's Exhibit 26, or at minimum require redaction of the racially derogatory language therefrom. The Government will suffer *no prejudice* from such a ruling.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, FL 33128
Tel: (305) 379-6667

By: /s/ David Oscar Markus
David Oscar Markus
Florida Bar No. 119318
dmarkus@markuslaw.com

A. Margot Moss
Florida Bar No. 91870
mmoss@markuslaw.com